IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 21-CR-245 (AJT) |
| v. : | |
| : | |
| IGOR Y. DANCHENKO, : | |
| : | |
| Defendant. : | |
| : | |

## THE UNITED STATES' MOTION TO
## INQUIRE INTO POTENTIAL CONFLICTS OF INTEREST

The United States of America, by and through its attorney, Special Counsel John H. Durham, respectfully moves this Honorable Court to inquire into a potential conflict of interest involving attorneys Danny Onorato and Stuart Sears, Esq., who represent the defendant Igor Y. Danchenko in the criminal matter before the Court.  Messrs. Oronato and Sears are partners at the law firm Schertler Onorato Mead & Sears.  In addition to their representation of the defendant, a separate lawyer at the firm is currently representing the 2016 "Hillary for America" presidential campaign (the "Clinton Campaign"), as well as multiple former employees of that campaign, in matters before the Special Counsel.  As discussed more fully below, the Clinton Campaign financed the opposition research reports, colloquially known as the "Dossier," that are central to the Indictment against the defendant.  Accordingly, for the reasons set forth below, the government respectfully requests that the Court inquire into the potential conflict issues set forth herein.  In support of this Motion, the government represents the following:

   I.    **FACTUAL BACKGROUND**

The defendant is charged in a five-count indictment with making materially false statements to the FBI, in violation of Title 18, United States Code, Section 1001 (the "Indictment").

As set forth in the Indictment, beginning in July 2016 and continuing through December 2016, the FBI began receiving a series of reports from a former British government employee ("U.K. Person-1") that contained derogatory information on then-U.S. presidential candidate Donald J. Trump ("Trump") concerning Trump's purported ties to Russia (hereinafter, the "Company Reports"). Over time, the FBI attempted to investigate the provenance and veracity of the information contained in the Company Reports, but was ultimately unable to confirm or corroborate most of the substantial allegations. The FBI ultimately learned that a law firm acting as counsel to the Clinton Campaign ("Law Firm-1") retained a U.S.-based investigative firm ("U.S. Investigative Firm-1") to conduct research on then presidential candidate Donald Trump and his affiliates. U.S. Investigative Firm-1, in turn, retained U.K. Person-1 and his firm to investigate Trump's purported ties to Russia.

In the course of investigating the Company Reports, the FBI learned that U.K. Person-1 relied primarily on the defendant to collect the information that ultimately formed the core of the allegations contained in the Company Reports. Beginning on January 24, 2017 and continuing through November 2017, the FBI interviewed the defendant several times in an effort to, among other things, determine the truth or falsity of the allegations contained in the Company Reports. The charges contained in the Indictment stem from materially false statements that the defendant made during the course of these interviews.

## II. APPLICABLE LAW

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes a defendant's "fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). However, the right to select counsel is not absolute. The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of

choice where an attorney has an actual or potential conflict of interest. *Wheat v. U.S.*, 486 U.S. 153, 160 (1988) ("federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them"). However, the decision to disqualify counsel of choice is "a serious matter and must be decided on a case-by-case basis." *United States v. Franklin,* 177 F. Supp. 2d 459, 464 (E.D. Va. 2001). Where a potential conflict exists, the prosecution is required to bring the matter to the attention of the court, with reversal likely for failure of either the government or the court to follow prescribed procedures. *United States v. Tatum*, 943 F.2d 370, 379–80 (4th Cir. 1991). As the Court in *Tatum* noted:

> When the risk of a conflict of interest is brought to the attention of the trial court, however, the court has the responsibility to investigate further, to advise the defendant personally, and to receive a knowing waiver if that is the expressed wish of the defendant. . . . [A] conflict situation which is not addressed by the trial court requires reversal. . . . [W]hen a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel.

*Id.* at 379.

While the trial court must recognize the presumption in favor of a defendant's counsel of choice, that presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164.

If the Court finds an actual or potential conflict of interest, the conflict may be the subject of waiver on the part of the represented party. *United States v. Swartz*, 975 F.2d 1042, 1048 (4th Cir. 1992). Nonetheless, it is well established that, "[A]lthough a defendant may waive his right to conflict-free representation, such waiver must be knowing, intelligent, and voluntary." *United States v. Gilliam,* 975 F.2d 1050, 1053 (4th Cir. 1992). A waiver is only knowing and intelligent

if made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970). While the Fourth Circuit has not specified specific circumstances in which a district court should reject a defendant's waiver, several sister circuits have noted that waiver is unacceptable in cases in which an actual conflict is "so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation," *United States v. Lussier,* 71 F.3d 456, 461 (2d Cir. 1995), or where the conflict is so severe as to "render a trial inherently unfair," *United States v. Vaquero,* 997 F.2d 78, 90 (5th Cir. 1993).

### III.　**DISCUSSION**

As discussed above, the Clinton Campaign, through Law Firm-1 and U.S. Investigative Firm-1, commissioned and financed the Company Reports in an attempt to gather and disseminate derogatory information about Donald Trump. To that end, U.K. Person-1 relied primarily on the defendant to collect the information that ultimately formed the core of the allegations contained in the Company Reports. The Indictment alleges that certain statements that the defendant made to the FBI about information contained in the Company Reports, were knowingly and intentionally false. Thus, the interests of the Clinton Campaign and the defendant could potentially diverge in connection with any plea discussions, pre-trial proceedings, hearings, trial, and sentencing proceedings. Areas of inquiry that may become relevant to defense counsel's representation of the defendant, and which also may become issues at trial or sentencing, include topics such as (1) the Clinton Campaign's knowledge or lack of knowledge concerning the veracity of information in the Company Reports sourced by the defendant, (2) the Clinton Campaign's awareness or lack of awareness of the defendant's collection methods and sub-sources, (3) meetings or communications between and among the Clinton Campaign, U.S. Investigative Firm-1, and/or U.K. Person-1 regarding or involving the defendant, (4) the defendant's knowledge or lack of knowledge

regarding the Clinton Campaign's role in and activities surrounding the Company Reports, and (5) the extent to which the Clinton Campaign and/or its representatives directed, solicited, or controlled the defendant's activities. On each of these issues, the interests of the Clinton Campaign and the defendant might diverge. For example, the Clinton Campaign and the defendant each might have an incentive to shift blame and/or responsibility to the other party for any allegedly false information that was contained within the Company Reports and/or provided to the FBI. Moreover, it is possible that one of these parties might also seek to advance claims that they were harmed or defrauded by the other's actions, statements, or representations. In addition, in the event that one or more former representatives of the Clinton Campaign (who are represented by defense counsel's firm) are called to testify at any trial or other court proceeding, the defendant and any such witness would be represented by the same law firm, resulting in a potential conflict. Finally, it is also likely that defense counsel's firm already has obtained privileged information from the Clinton Campaign regarding matters involving or relating to the defendant, the Company Reports, and the conduct alleged in the Indictment.

Defense counsel has represented to the government that their law firm colleague representing the Clinton Campaign has had no involvement to date in this criminal case against the defendant. Further, counsel for the Campaign has agreed to wall himself off from any future involvement in the matter. Defense counsel has also represented that separate support staff will be assigned to each matter. Notwithstanding the potential conflicts involved, the government believes that this potential conflict is waivable, should the defendant so choose, assuming a knowing, intelligent and voluntary waiver is executed.

IV.     **CONCLUSION**

  Based on the foregoing, the government respectfully requests that Court inquire into the conflict issues set forth herein.

                Respectfully submitted,

                JOHN H. DURHAM
                Special Counsel

                By:

                /s/ Michael T. Keilty
                Michael T. Keilty
                Assistant Special Counsel
                michael.keilty@usdoj.gov

                Andrew J. DeFilippis
                Assistant Special Counsel
                andrew.defilippis@usdoj.gov

                Jonathan E. Algor
                Assistant Special Counsel
                jonathan.algor@usdoj.gov

Dated:  December 17, 2021