## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00245-AJT |
| | ) | |
| IGOR Y. DANCHENKO, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT IGOR DANCHENKO'S OPPOSITION
### TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

Defendant Igor Danchenko, by and through counsel, respectfully submits this opposition to the Special Counsel's Motions *in Limine* ("SCO Motion") to (1) admit certain acts and statements as direct evidence or, alternatively, pursuant to Federal Rule of Evidence 404(b), (2) admit certain emails and statements, (3) admit evidence of the FBI's prior counterintelligence investigation of Mr. Danchenko, and (4) exclude evidence and preclude argument concerning allegations of political bias underpinning the Indictment in this matter.

## INTRODUCTION

The Indictment in this case is, at best, a misguided attempt to contort the false statements statute beyond recognition to try and hold someone responsible for what the Special Counsel believes was misinformation contained in the 2016 Company Reports that became a part of the FBI's investigation of alleged collusion between former President Trump's campaign and Russia. Without ever having spoken to Mr. Danchenko, the Special Counsel isolates and manipulates truthful facts Mr. Danchenko provided to the FBI to develop the misleading narrative described in the Indictment and now the SCO Motion.

1

Although the Indictment is 111 paragraphs and 39 pages long and full of speaking allegations irrelevant to the charges, the Special Counsel actually charged Mr. Danchenko with lying about two specific events. First, the Special Counsel alleges that Mr. Danchenko lied about whether he had "spoken with" Charles Dolan about any "specific" information contained in the Steele Dossier. Second, the Special Counsel alleges that Mr. Danchenko lied when he said that he received an anonymous phone call and then *speculated* that he "believed," but was "*not sure*," the caller *could have been* Sergei Millian. These contentions are wholly without merit and the breadth, hyperbole, and circular reasoning that define both the Indictment and the SCO Motion, including extensive but unnecessary references to the political affiliations of various uncharged individuals, fall far short of salvaging the unsupported charged conduct.[1]

The Special Counsel correctly notes that, considering the precise and narrow scope of the false statements charges, "[a] jury will have to decide *only* whether the defendant knowingly and willfully made materially false statements to the FBI regarding his sourcing for information reflected in the Steele Reports. *Nothing more, nothing less*." SCO Motion at 34 (emphasis added). However, in a transparent attempt to confuse the issues, prejudice Mr. Danchenko, and mislead the jury, the Special Counsel now seeks to inject other irrelevant people, conduct, and issues into this straightforward trial. These extraneous people, conduct, and issues have nothing to do with the false statements charges the Special Counsel actually brought against Mr. Danchenko. In its effort to cloud the issues actually before the jury, the Special Counsel strains the rules of evidence beyond their breaking point in an unnecessary and impermissible attempt to make this case about more than it is. Mr. Danchenko respectfully asks this Court to enforce the clear limitations on

---

[1] Mr. Danchenko reiterates and incorporates by reference the facts and arguments in his pending Motion to Dismiss the Indictment, ECF No. 79.

admissible evidence to ensure that the jury focuses on the ***only relevant issue*** – whether Mr. Danchenko made materially false statements to the FBI about two events as charged in Counts 1 through 5 of the Indictment.

For the reasons detailed below, Mr. Danchenko respectfully requests that this Court deny the Special Counsel's Motions *in Limine*. First, the proffered evidence is wholly irrelevant to the actual false statements charges in the Indictment. Second, the proffered evidence of certain acts and statements is inadmissible character evidence pursuant to Federal Rule of Evidence 404(b) because the Special Counsel is improperly attempting to use the information to prove propensity or disposition. Third, much of the proffered evidence is inadmissible hearsay. Fourth, admission of the proffered evidence will lead to an unnecessarily protracted, confusing, and complicated "trial within a trial." Fifth, the proffered evidence is similarly inadmissible pursuant to Federal Rule of Evidence 403 because any probative value is substantially outweighed by the risk of prejudice, confusion, and delay. Each category of evidence is briefly summarized here and addressed fully in turn below.

1. Uncharged but purportedly false statements by Mr. Danchenko to the FBI reflecting Donald Trump's alleged salacious sexual activity in the Ritz Carlton Hotel in Moscow. These purported statements are immaterial, irrelevant, and impermissible character evidence.

2. Uncharged but purportedly false statements by Mr. Danchenko that he never informed friends, associates, and/or other sources that he worked for Orbis or Christopher Steele. These purported statements are immaterial, irrelevant, and impermissible character evidence.

3. A February 24, 2016 email from Mr. Danchenko to Cenk Sidar. This email is immaterial, irrelevant, and impermissible character evidence.

4. Emails from Sergei Millian to Dimitry Zlodorev, which are irrelevant and hearsay.

5. Statements by Christopher Steele to the FBI. These statements are inadmissible testimonial evidence and hearsay and ignore Mr. Danchenko's Sixth Amendment right to confront his accusers

6. The fact of the prior counterintelligence investigation of Mr. Danchenko should be admitted.

7. The Court should permit Mr. Danchenko to introduce evidence and argument concerning independently relevant matters like witness credibility, bias, motive, or investigative tactics.

## ARGUMENT

The Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. Accordingly, this Court has broad discretion to admit or exclude evidence. *United States v. Grier*, 619 F. App'x 227, 228 (4th Cir. 2015) (citing *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011) (reviewing court will only overturn an evidentiary ruling that is arbitrary and irrational); *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (district court has discretion to admit or exclude evidence)). Indeed, a trial court can exclude even relevant evidence where the "probative value is substantially outweighed by a danger of […] unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Evidence is only relevant, however, when it tends to make a legally consequential fact (a fact that is ***of consequence in determining the action***) more or less probable. *See* Fed. R. Evid. 401. In any false statements prosecution pursuant to 18 U.S.C. § 1001(a)(2), the government must prove that the defendant knowingly and willfully made a false, material statement in a matter within the jurisdiction of a department or agency of the United States. *United States v. Stover*, 499

4

Fed. App'x 267, 272–73 (4th Cir.2012) (citing *United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir.2004)). For each alleged false statement, the Special Counsel must prove that the statement itself is material. *See* 18 U.S.C. § 1001(a)(2). A statement is material if it has a natural tendency to influence, or is capable of influencing, a particular decision of the agency to which it is addressed. *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (citations omitted); *United States v. Purpera*, 844 F. App'x 614, 633 (4th Cir.), *cert. denied*, 211 L. Ed. 2d 117, 142 S. Ct. 256 (2021) (citing *United States v. Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012)). A statement is not material if it is merely of general interest to the government. *Id*. Rather, the statement must be capable of influencing a particular government decision. *Id*. The Government must prove every element of an alleged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 365 (1970) (reflecting that the prosecution must bear the burden to prove beyond a reasonable doubt "the existence of every fact necessary to constitute the crime charged"). Accordingly, for each count alleged in the Indictment, the Special Counsel must prove that each alleged false statement, considered independently, is material because it had the tendency or capability to influence a specific government decision.

The pretrial process is designed to ensure that the parties and the Court are prepared to efficiently litigate a case, not to create an evidentiary sideshow. The spurious and superfluous evidence proffered by the Special Counsel in the Motions *in Limine* is immaterial to the only relevant questions here – (1) whether Mr. Danchenko made false statements, and (2) whether each allegedly false statement, when analyzed independently, is material because it had the tendency or capability to influence a specific government decision. Further, for the reasons below, admitting the irrelevant evidence proffered by the Government will only serve to unnecessarily and impermissibly complicate, confuse, and delay the trial in this matter.

I. **The Special Counsel Cannot Establish Any Basis to Admit Irrelevant Character Evidence for the Purpose of Proving Bad Character or Propensity.**

One "revered and longstanding policy" in our criminal justice system is that "an accused is tried for *what* he did, not *who* he is." *United States v. Hall,* 858 F.3d 254, 266 (4th Cir. 2017) (quoting *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014)) (emphasis in original). Therefore, the general prohibition against admitting character evidence in Federal Rule of Evidence 404(b) "protects against juries trying defendants for *prior acts* rather than *charged acts*. *Id*. (quoting *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)) (emphasis in original).

Character evidence often offers only "slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened […]. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." *See* Fed. R. Evid. 404 (Advisory Committee Notes, 1972 Proposed Rules). In *Hall*, for example, the Fourth Circuit noted: "[w]hen other crimes evidence is of 'marginal probative value' and other evidence supporting a drug trafficking defendant's guilt is 'scarc[e] and equivocal,' there is 'an unacceptable risk that the jury w[ill] assume that [the defendant] ha[s] a propensity for [drug] trafficking and convict on that basis alone.'" 858 F.3d at 270 (citing *United States v. Aguilar-Aranceta*, 58 F.3d 796, 802 (1st Cir. 1995); *United States v. Sumner*, 119 F.3d 658, 661 (8th Cir. 1997) (holding that the district court abused its discretion in admitting evidence of the defendant's other crimes because the "overall weakness of the government's case" increased the prejudice associated with introduction of such evidence); *United States v. Rhodes*, 886 F.2d 375, 380 (D.C. Cir. 1989) (holding that the district court plainly erred in admitting prior bad acts evidence because the "weakness of the government's other evidence" enhanced the other acts' prejudicial effect).

Accordingly, Federal Rule of Evidence 404(b)(1) prohibits introducing evidence of a prior crime, wrong, or act as evidence of a person's bad character "to show that on a particular occasion the person acted in accordance with the character." *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 2021 WL 5104693, at *1 (E.D. Va. Aug. 26, 2021), *aff'd*, 2021 WL 5104694 (E.D. Va. Oct. 14, 2021). This prohibition is "not based on the notion that 'character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" *Hall,* 858 F.3d at 260 (quoting *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)).

To protect defendants from the risk of prejudice associated with character evidence, the Government bears the burden to prove that the prior bad act is admissible for a "proper, non-propensity purpose," such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. (quoting Fed. R. Evid. 404(b)(2)). To satisfy this burden, the Government must prove that the evidence is "relevant to an issue, such as an element of an offense," and ***not*** to "establish the general character of the defendant." *Id*. (citing *Queen*, 132 F.3d at 997). The Government must also demonstrate that evidence is necessary in the sense that it is probative of an essential claim or element of the offense, that the evidence is reliable, and that the probative value not substantially outweighed by confusion or unfair prejudice. *Id*.

The Government must identify each proper purpose for which it will use the other acts evidence and explain how that evidence "fits into a chain of inferences—a chain that connects the evidence to [each] proper purpose, no link of which is a forbidden propensity inference." *Hall,* 858 F.3d at 266 (citing *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)). Even if the government provides a proper purpose for admitting prior bad act evidence, such evidence is still

inadmissible if its likely prejudicial effect substantially outweighs its probative value. *Id*. (citing *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012)).

The Government must satisfy a four-step test for determining when evidence of prior bad acts is admissible. *Id*. (citing *Queen*, 132 F.3d at 997.) First, "[t]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant." *Id.* Second, "[t]he act must be necessary in the sense that it is probative of an essential claim or an element of the offense." *Id.* Third, "[t]he evidence must be reliable." *Id.* Fourth, the "probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *Id.*

In contrast, evidence of other acts cannot be offered merely to provide context. Other acts are only direct evidence of the charged offense where the acts are "inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (citing *United States v. Chin*, 83 F.3d 83, 88 (4th Cir.1996); *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir.2007) (noting that evidence is intrinsic if it is necessary to "provide context ***relevant to the criminal charges***") (emphasis added). "Evidence is inextricably intertwined with the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id*. (citing *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir.2007)) (internal citation and quotation marks omitted).

For the reasons detailed below, the other acts and statements proffered by the Government here are not direct evidence of any false statement alleged in the Indictment. Instead, the evidence of other acts and statements is irrelevant, unduly prejudicial and confusing, and inadmissible character evidence pursuant to Federal Rule of Evidence 404(b).

A. <u>Donald Trump's Purported Sexual Activity at the Moscow Ritz Carlton</u>.

Section I.B of the Special Counsel's Motion purports to be about introducing Mr. Danchenko's statements to the FBI regarding the source of the Dossier's explosive claim about former President Trump's alleged salacious activity at the Ritz-Carlton Hotel in Moscow. The Special Counsel argues that the evidence should be admissible under the following theories: (1) as direct evidence of Mr. Danchenko's alleged "efforts to fabricate and misattribute information reflected in the Steele Reports, and provide important factual context regarding the two individuals – Charles Dolan and Sergei Millian – who are the subjects of the defendant's false statements to the FBI;" (2) as direct evidence of materiality; and, in the alternative, (3) as evidence of Mr. Danchenko's "intent, preparation, knowledge, common scheme or plan, and absence of mistake" under Rule 404(b). SCO Motion at 7-13. Allowing the Special Counsel to introduce this prejudicial, immaterial, irrelevant, and impermissible evidence would create a sideshow that would without a doubt overshadow the entire case.

i. *The Special Counsel's Motion Misrepresents the Facts.*

As an initial matter, the Special Counsel's Motion strikingly misrepresents the facts. While Section I.B purports to be about Mr. Danchenko's statements to the FBI, as the Special Counsel is well aware, Mr. Danchenko never told the FBI that his source for the information about former President Trump's alleged salacious sexual activity in the Ritz Carlton Hotel was Sergei Millian, Charles Dolan, or Bernd Kuhlen. Rather, Mr. Danchenko told the FBI in January 2017 that he was told about a well-known "rumor" regarding the alleged activity in early June 2016 by I.V. and "that he had not been able to confirm the story" when he later met with hotel staff:

> Danchenko said that this information came, partially, from [I.V.]. . . When Danchenko asked [I.V.] in early June 2016 (the June trip to Russia) . . . [I.V.] said that there was a "well known story" about Trump's activities in the very hotel where Danchenko was staying at the time – the Ritz Carlton. . . The "well known story"

involved the allegation that Trump was "into water sports" and had engaged in that activity "in the presidential suite" at the Ritz Carlton. In terms of whether the story was true, [I.V.] explained that people "know" but that it "only becomes fact if people come forward." [I.V.] said that the hotel is bugged, and "heaven only knows" who or what has been filmed by the FSB. . .

During a free minute [during a meeting at the Ritz Carlton on another matter, Mr. Danchenko] asked about "this stuff about Trump at the hotel." His interlocutors laughed it off, stating that "all kinds of things happen at the hotel" and with celebrities, "one never knows what they're doing." Danchenko said that it wasn't a denial. And asking the hotel staff who were assisting [with Mr. Danchenko's other matter], one girl commented that "anything goes" at the hotel, and added that, "officially, we don't have prostitutes."

. . . Danchenko said that he reported Trump's unorthodox sexual activity at the Ritz as "rumor and speculation" and that he had not been able to confirm the story.

January 25, 2017 FBI interview of Mr. Danchenko.

Even though the Special Counsel has the above statement and is well aware that Mr. Danchenko claimed to have received this information in early June 2016 from [I.V.], not Millian, Dolan, or Kuhlen, the Special Counsel's motion goes on to feign bewilderment about how "it would be impossible for Millian to confirm the Ritz Carlton Allegation (and other information) to the defendant in June 2016 because [Mr. Danchenko only received one anonymous phone call from someone that may have been Millian in July 2016]." SCO Motion at 10. Therefore, the Special Counsel's argument is plainly disingenuous because Mr. Danchenko unambiguously and consistently told the FBI that he had never definitively spoken or met with Millian, that he learned the relevant information in early June 2016 from another individual, and that he raised the rumors with hotel staff while he was in Moscow in June 2016.

Mr. Danchenko's statements to the FBI regarding Sergei Millian's potential reference in the Dossier regarding the Moscow Ritz allegations were based on a request by the FBI for him to speculate as to the identity of the individual Christopher Steele referred to as "Source D." Contrary

to the Special Counsel's one-line summary of that discussion, the actual transcript shows that

Mr. Danchenko did not know who Steele was referring to:

Danchenko:   I mean I personally think it could be um, could be a Steele's reference to someone like SERGEY MILLIAN.

Agent 1:   Okay. Because in, and that was the other thing that if, if the characterization of source E, because there's also um, source E is a senior western member of staff at the hotel.

Danchenko:   Uh-huh.

Agent 1:   And source E provided an introduction.  Would that also be MILAN? MILLIAN.

Danchenko:   Hmm.

Agent 1:   Or who you think—

Danchenko:   No, I don't, I don't think it's just uh, I don't think [UI] one of the um, hotel managers.

Agent 1:   You think source E is?

Danchenko:   [stuttering] Somebody I met.  And aaahh [UI] you want upset no people. And I don't know who, who he's referring to.  Um and I'll go check my business cards and see if I can find—

Agent 1:   [OV] Uh-huh.

Danchenko:   --you know a couple of names.

                          **************

Danchenko:   Associated with the Ritz in Moscow.  [UI] I might, find somebody [UI], but I really don't know who STEELE is referring to there.

Agent 1:   Okay.  But you, you made you, you think that maybe D could be Mil, MILLIAN.

Danchenko:   Uh could, could be referring to MILLIAN or some, or someone like that.

Agent 1:   Okay.

11

> Danchenko:  I don't know, but the question is who, who was the person who organized Trump's trips to Russia? I don't know.[2]

*See* May 18, 2017 Interview of Mr. Danchenko

As is evident from the transcripts, the Special Counsel's Motion ignores Mr. Danchenko's actual statements to the FBI and instead tries to misattribute statements made by Steele in the Steele Reports to Mr. Danchenko. Mr. Danchenko was never able to determine who Steele was referring to as Sources D and E. And he clearly never identified either source as Millian or Kuhlen. These actual facts, let alone the distorted reality portrayed by the Special Counsel, cannot possibly form direct evidence of any of the five counts alleged in the Indictment and this evidence is also plainly impermissible under Rule 404(b).

>    ii.   *Evidence Related to Donald Trump's Alleged Salacious Sexual Activity At The Ritz Carlton Hotel In Moscow Is Not Direct Evidence of The Five Counts Charged In The Indictment.*

What Donald Trump did or did not do at a hotel in Moscow, and anything Mr. Danchenko allegedly said about anything he had heard Trump may have done, is entirely unrelated to the specific false statements the Special Counsel actually charged in the Indictment. The five counts charged in the Indictment have nothing to do with anything that purportedly happened at a hotel in Moscow. Specifically, evidence related to Donald Trump's salacious sexual activity at the Ritz

---

[2] Adding to the confusion over who Steele was referring to was the fact that the Dossier referred to Millian as source D in other reports that Mr. Danchenko believed was referring to his conversation with the anonymous caller in July 2016. In the report that referenced the Moscow Ritz allegations, the Dossier referred to source D as having been responsible for organizing Trump's trips to Moscow as well as having confirmed the Moscow Ritz information. It did not make sense and that is reflected in the dialogue between Mr. Danchenko and Agent 1. Mr. Danchenko had no way of knowing whether Millian was actually source D or whether Millian was providing information to Steele directly or through another source. It is also entirely possible that Steele was mistaken about the source of the information, or accidentally used the same source identifier for a different source, or maybe misattributed it to Millian or someone else. Regardless, Mr. Danchenko was far from definitive and was merely brainstorming with the agent about who Steele was referring to as source D.

Carlton Hotel in Moscow is not "inextricably intertwined," "part of a single criminal episode," or "necessary preliminaries" to any of the *charged* statements. *Lighty*, 616 F.3d at 352. "Evidence is inextricably intertwined with the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* (citing *Edourd*, 485 F.3d at 1344) (internal citation and quotation marks omitted). The Moscow Ritz information is entirely separate, apart, and independent from the false statements the Special Counsel actually charged Mr. Danchenko with making about his interactions with Dolan and a person he believed could have been Millian. This evidence is not integral to or in any way part of the *charged* statements. There is simply no basis for the Special Counsel to connect these discrete, divergent dots and establish any evidentiary link – let alone a *direct* link – between the Moscow Ritz and the *charged* statements.

Moreover, the Special Counsel's argument that the materiality of uncharged allegedly false statements can be used as direct evidence that the *charged* statements were material is plainly erroneous. There is a very real, and legally impermissible, risk that a juror may improperly find that the alleged materiality of these uncharged statements somehow satisfies the materiality element for one or more of the *charged* statements. This risk alone is grounds to exclude the uncharged statements pursuant to Rule 403. The Special Counsel must prove that each of the five *charged* allegedly false statements, analyzed independently, are material. Therefore, any evidence about the Moscow Ritz has no bearing on the materiality of the charged statements regarding Dolan and Millian and presents a substantial risk of impermissibly confusing the jury and building unnecessary and impermissible error into the trial.

   *iii.*  *Evidence Related to Donald Trump's Alleged Salacious Sexual Activity at the Ritz Carlton in Moscow Is Inadmissible Pursuant to Rule 404(B).*

  The Moscow Ritz evidence is also impermissible character evidence under Rule 404(b)(1) because the Special Counsel fails to satisfy the four-step test articulated in *Hall*, 858 F.3d at 266. First, as described above, any evidence about the Moscow Ritz is irrelevant to the five false statements counts actually charged in the Indictment because it does not make a consequential fact more or less probable. *See* Fed. R. Evid. 401. Evidence about the Moscow Ritz does not assist the trier of fact to determine whether it is more or less probable that Mr. Danchenko made materially false statements about his interactions with Dolan and Millian. It simply has no relevance to the falsity or truthfulness of the ***charged*** statements. Moreover, it would be improper for jurors to attribute the materiality of these uncharged statements to the completely unrelated ***charged*** statements. As described in the legal framework above, the Special Counsel must prove that each allegedly false statement described in the Indictment is material, without regard to the purported materiality of any unrelated and uncharged statements. Second, and for the same reasons, the evidence is not "necessary in the sense that it is probative of an essential claim or an element of the offense." Third, the Special Counsel's evidence is not reliable. The Special Counsel has not offered any information that would allow this Court and ultimately the jury to meaningfully and independently assess the reliability and truthfulness of any evidence related to the Moscow Ritz. Dolan has denied providing Mr. Danchenko any information about the allegations contained in the Dossier and Mr. Danchenko never claimed to have met with Kuhlen specifically.  Millian, as the Court is now aware, will not even be a witness at trial. The Special Counsel concedes that Millian is unavailable. Fourth, the probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, and wasting time, as described below.

> iv.    *Introduction Of Evidence Related to Donald Trump's Salacious Sexual Activity at the Ritz Carlton in Moscow Would Create a Sideshow That Would Unquestionably Overshadow This Entire Case.*

The Special Counsel's misleading characterization of the evidence concerning the Moscow Ritz would undoubtedly overshadow this entire case. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1346-1347 (3d Cir. 2002) (excluding evidence where introduction of "expansive allegations" of "such low probative value" would require time-consuming mini-trial on rebuttal allegations); *see also Sarin v. Poojan, Inc.*, No. 3:08-CV-1077, 2010 WL 5463250, at *6 (M.D. Pa. Dec. 29, 2010) (excluding evidence that would create "a sideshow that distracts the jury" with a "trial within a trial" requiring the defendant to spend "substantial amount of time discrediting the [findings]" and delaying actual trial). This unnecessary and prejudicial sideshow should be excluded under Rule 403. The probative value of this evidence, if any, is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 403.

The Special Counsel's assertion that these uncharged statements "do[] not reflect conduct that is more sensational, disturbing, or prejudicial than the subject matter of the charged crimes" cannot be taken seriously. The Special Counsel specifically indicted Mr. Danchenko on four counts related to his equivocal and speculative statements that he "***believed***," but was "***not sure***," that an anonymous caller ***could have been*** Sergei Millian and one count related to telling the FBI that, although he talked to Dolan about topics related to the Steele Reports, they had not ***spoken*** about ***specific*** allegations contained in the Reports. Surely, rumors that then-presidential candidate Donald J. Trump engaged in "water sports" in the "presidential suite" at the Ritz Carlton in Moscow and that Russian intelligence may have a recording of the act is more "sensational, disturbing, or prejudicial" than the charged statements.

Even if the substance of these allegations were not about a presidential candidate engaging in what the Special Counsel describes as "salacious sexual activity," which it is, the unfair prejudicial effect of creating a trial within a trial substantially outweighs whatever limited probative value the evidence might have. Introducing this evidence will certainly confuse and mislead jurors and waste time. In fact, the Special Counsel acknowledged that it intends to use this evidence, at least in part, to argue that the uncharged statements themselves were material. *See* SCO Motion at 10-11.  Asking a juror to consider the materiality of an uncharged statement creates an impermissible risk that a juror may improperly rely on the materiality of the uncharged statement rather than considering the materiality of the charged statements independently. *United States v. Poindexter*, 942 F.2d 354, 362 (6th Cir. 1991) (excluding evidence when it was "substantially more likely to confuse the jurors than enlighten them").

The Court should not allow the Special Counsel to present this prejudicial sideshow. Every aspect of the Special Counsel's "evidence" concerning these uncharged statements would need to be heavily examined at trial and the time devoted on these uncharged allegations alone will likely overshadow the five counts actually charged against Mr. Danchenko.

    B. <u>Statements About Orbis and Steele</u>.

As it has elsewhere in its Motion, the Special Counsel has cherrypicked portions of Mr. Danchenko's interviews where he was not questioned specifically about Dolan to support its allegations that Mr. Danchenko concealed material information from the FBI. And so, the argument goes, had the FBI known about the fact that Mr. Danchenko had revealed his work with Orbis to Dolan (and others), it would have interviewed Dolan (and others). The Special Counsel even goes so far as to argue that had the FBI known that Mr. Danchenko had attended a June 2016 conference planning trip in Moscow with Dolan, it would have learned about information Dolan

provided to Mr. Danchenko that ended up in the reports. But the Special Counsel ignores, and conceals from this Court, that Mr. Danchenko was interviewed dozens of times and during the course of those interviews, particularly when asked specific questions about Dolan (which was not often), Mr. Danchenko (1) told the FBI about the Moscow trips with Dolan, (2) told the FBI that Steele knew of Dolan, (3) told the FBI that not only was Dolan doing work with Olga Galkina but that Mr. Danchenko himself had introduced them, and (4) told the FBI that Dolan had connections and relationships with high-level Kremlin officials, including President Putin's personal spokesperson, Dmitry Peskov. Indeed, when agents drafted a December 2017 communication in support of opening an investigation into Dolan, *they included the information Mr. Danchenko provided them as support for opening the investigation*.[3] Therefore, it is simply insincere to suggest that Mr. Danchenko's alleged failure to indicate that Dolan knew that Mr. Danchenko did work for Orbis frustrated any FBI investigation in light of all the information Mr. Danchenko provided to the FBI.[4]

---

[3] The December communication is highly exculpatory with regard to the essential element of materiality and it is not clear why it was only produced 30 days from the start of trial. It was produced as Jencks material (also late by the terms of the Court's Order requiring all Jencks to be produced by September 1) but is obviously *Brady* evidence. The defendant understands that the CIPA procedures may have slowed the production of certain categories of discovery but given the Indictment's allegations about the materiality of Mr. Danchenko's failure to attribute public information to Dolan, the production of this specific document should have been a priority for declassification.

[4] With regard to Mr. Danchenko's alleged disclosure of his work for Orbis with other individuals, the Special Counsel never even offers any argument as to how its knowledge of those disclosures would have caused the FBI to interview those individuals "in an effort to determine whether the information provided by the defendant was accurate, false, or a product of Russian disinformation." Moreover, it is unclear from the motion what statements the Special Counsel is referring to and whether, after becoming aware of the disclosures, the Government did what it said it would have and actually interviewed each of the individuals who may have been aware of his Orbis work generally.

The Special Counsel's plan to introduce uncharged misleading or incomplete statements will deny Mr. Danchenko a fair trial because the jury, rightfully so, is going to be confused about how the uncharged statements factor into its materiality analysis. Indeed, the SCO Motion makes clear that it seeks to introduce several of the uncharged allegations, including Mr. Danchenko's alleged failure to tell the FBI that others were aware of his work for Orbis, for the very purpose of proving materiality. That is plainly improper. To support a false statement charge, **each** of the charged statements must be material **on its own** and the Special Counsel's intentional clouding of materiality through other uncharged statements will make it impossible for the jury to property consider and weigh the evidence as it relates to the actual charges the Special Counsel has asked the jury to decide. Therefore, Mr. Danchenko's alleged statements to the FBI and others about Orbis and Steele should be excluded at trial.

C. The February 24, 2016, Email from Mr. Danchenko to Cenk Sidar.

The Special Counsel seeks to admit an irrelevant February 24, 2016 email from Mr. Danchenko to Cenk Sidar in which Mr. Danchenko encouraged Sidar to emphasize the sources for information contained in a Sidar Global report. This email is irrelevant to any of the actual allegations in this case, highly prejudicial when taken out of context and spun as the government seeks to do and constitutes impermissible character or propensity evidence. The Government mischaracterizes this email to inaccurately and impermissibly vilify Mr. Danchenko. Mr. Danchenko did not instruct or encourage Sidar to fabricate non-existent sources. Instead, after reviewing a draft Sidar Global report, Mr. Danchenko merely encouraged Sidar to attribute information to its rightful underlying source to emphasize that the information contained in the report was not conjecture or speculation and did, in fact, derive from a source. To the extent Sidar did not wish to identify himself as a source, Mr. Danchenko suggested that Sidar could describe

18

himself, accurately but anonymously, as a "Istanbul-Washington-based businessman."

The Government seeks to take this email entirely out of context for the sole purpose of falsely suggesting that Mr. Danchenko had a propensity to fabricate or falsify sources. In fact, the Government admits that it wants to use the email to show that "misattribution of sources was an intentional feature of [Mr. Danchenko's] business intelligence work." SCO Motion at 17. However, the question of whether Mr. Danchenko encouraged Sidar to emphasize the sources for information contained in a Sidar Globar report that was entirely unrelated to the Steele Dossier has absolutely nothing to do with the narrow, straightforward charges in the Indictment – namely whether Mr. Danchenko lied about speaking with Dolan about any information contained in the Steele Dossier or lied when he speculated that he believed, but was "not sure," that an anonymous caller could have been Millian.

The February 24, 2016, email is entirely unrelated to any element the Government will need to prove at trial. The Government cannot prove that this email is admissible for any proper, non-propensity reason. Instead, the Special Counsel merely wants to inject this email into evidence as impermissible evidence of Mr. Danchenko's character. Accordingly, the Government cannot establish any basis to admit the February 24, 2016, email from Mr. Danchenko to Sidar.

## II.   The Special Counsel Cannot Establish Any Basis to Admit Irrelevant Hearsay Emails and Statements.

Hearsay rules are designed to exclude unreliable out of court statements offered for their truth. *Hemphill v. New York*, 142 S. Ct. 681, 693 (2022) (citing Fed. R. Evid. 802). Here, the Special Counsel seeks to admit various emails and statements that Mr. Danchenko did not make, send, receive, hear, or even know about. The Government offers nothing to establish the reliability of this evidence. Further, all these emails and statements are wholly irrelevant to the only relevant question in this case – whether Mr. Danchenko made materially false statements. Accordingly, the

Government has not and cannot establish any basis to admit this evidence.

   A.   The Special Counsel Cannot Circumvent the General Prohibition Against Hearsay to
        Admit a Series of Emails from Sergei Millian to Dimitry Zlodorev.

   The Government has not and cannot establish any basis to admit three emails from Sergei

Millian to Dimitry Zlodorev. Mr. Danchenko did not send, receive, or know about these emails.

The Government concedes that the declarant, Millian, will not testify. Accordingly, the

Government attempts to shoehorn these emails into evidence through convoluted logic claiming

that these emails are not hearsay at all or, alternatively, that the emails are admissible pursuant to

an exception to the prohibition against hearsay. As detailed below, these emails are hearsay and

not admissible pursuant to any hearsay exception cited by the Government.

   First, the Government blithely and misleadingly characterizes the emails as nothing more

than "a series of questions" that were "not intended to assert anything." However, the Government

conveniently ignores that a question *is* a hearsay statement where the question "can be construed

as an intended assertion." *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008)

(collecting cases). In *Sinclair*, the Fourth Circuit concluded that a series of questions through

which the declarant asked what happened and who was involved were not hearsay because the

questions were simply "requests for information" and could not be construed as assertions or

representations. *Id*. Here, in stark contrast, the Special Counsel implicitly construes the questions

that Millian asked in his emails as an inherent admission that he did not know, contact, or meet

with Mr. Danchenko. These questions are not merely objective requests for information. Rather,

the Special Counsel construes these questions to suggest proof of a substantive element of its case.

Accordingly, the emails are hearsay statements, not mere information gathering questions.

   Second, in contrast to the illogical position espoused by the Government, the emails are

not admissible to "***prove Millian's state of mind*** at the time he sent the emails." SCO Motion at

26. Millian is not on trial here and so his state of mind is entirely irrelevant to the only relevant question – whether Mr. Danchenko made materially false statements to the FBI. *See* Fed. R. Evid. 402 (irrelevant evidence is not admissible). Moreover, Federal Rule of Evidence 803(3) creates an exception to the rule against hearsay that allows a party to introduce a statement of the declarant's state of mind (such as motive, intent, or plan), but ***not*** "a statement of memory or belief to prove the fact remembered or believed." *See* Fed. R. Evid. 803(3). In *United States v. Holland*, the Fourth Circuit concluded that the trial court properly excluded testimony from a wife who stated that her husband discovered a rifle and told her he "thought he had given it back" because the testimony was offered to prove a fact, not to demonstrate the mental state or emotional condition of the husband. 417 F. App'x 359, 361 (4th Cir. 2011). Here, the Special Counsel offers the Millian emails to suggest that he did not know, contact, or meet with Mr. Danchenko, not to demonstrate Millian's emotional condition, motive, intent, or plan when he wrote the emails. Accordingly, the Government has not and cannot establish that the emails are admissible pursuant to the "state of mind" hearsay exception in Fed. R. Evid. 803(3).

Third, the Government has not and cannot meet the substantial, heavy burden to admit the emails pursuant to the residual hearsay exception in Federal Rule of Evidence 807. That rule creates a narrow exception to the general prohibition against hearsay and allows a trial court to admit hearsay statements sparingly, very rarely, and ***only*** in exceptional circumstances. *See United States v. Arigbede*, 854 F.2d 1318 (4th Cir. 1988) (citations omitted); *United States v. Heyward*, 729 F.2d 297, 299–300 (4th Cir.1984) (citations omitted); *United States v. Taylor*, 2011 WL 13195944, at *2 (E.D. Va. Mar. 3, 2011), *aff'd*, 457 F. App'x 282 (4th Cir. 2011) (citations omitted) (all reflecting that the legislative history underlying the residual hearsay exception states: "It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional

21

circumstances"). This residual exception "should be utilized only after much consideration and examination." *United States v. Cunningham*, 761 F. App'x 203, 206 (4th Cir. 2019) (quoting *United States v. Dunford*, 148 F.3d 385, 394 (4th Cir. 1998)). The residual hearsay exception does not constitute a broad license to introduce hearsay statements because the exception cannot be construed so broadly that it swallows the underlying rule. *Dunford*, 148 F.3d at 394. *See also United States v. Kim*, 595 F.2d 755, 765 (D.C. Cir. 1979) (citing Senate Committee on the Judiciary Report 93-1277) (reflecting that the residual hearsay exception "does not [...] establish a broad license for trial judges to admit hearsay statements"). Accordingly, a "court may admit hearsay under the residual exception *only* upon finding that (1) the hearsay has circumstantial guarantees of trustworthiness equivalent to those of the recognized exceptions, (2) it is offered as evidence of a material fact, (3) it is more probative than any other evidence that the proponent can reasonably obtain, and (4) admitting it will best serve the purposes of the Federal Rules of Evidence and the interests of justice." *Cunningham*, 761 F. App'x at 206 (4th Cir. 2019) (emphasis added) (citing Fed. R. Evid. 807(a)).

Here, the Government asks this Court to accept on blind faith that Millian was truthful in his emails to Zlodorev. However, the Government offers no information that would allow this Court, and ultimately a jury, to independently and meaningfully evaluate the truthfulness of Millian's statements. The Government offers no direct evidence to prove what Millian knew when he wrote the emails or what his motivations might have been. Without testimony from Millian, the Government cannot prove that Millian even wrote the emails, only that the emails appear to have been sent from Millian's purported email address. Also, at the time the emails were purportedly sent, it was well known that there was an investigation into the Steele Dossier/Company Reports. Millian had reason to be aware of the investigation generally and that he might have been a focus

of the investigation. Indeed, Millian was aware that he "came under the FBI's radar" at least as early as on November 2, 2016. *See* Report of the Select Senate Committee on Intelligence Report on Russian Active Measures Campaigns and Interference in the 2016 U.S. Election, Volume 5: Counterintelligence Threats and Vulnerabilities (Aug. 18, 2020), at 508. Accordingly, without testimony from Millian, the Government cannot prove that the emails were not written strategically to promote Millian's own personal interests considering the ongoing investigation. Further, these emails do not constitute evidence of a material fact. The Government implicitly construes the questions that Millian asked in his emails as an inherent admission that he did not know, contact, or meet with Mr. Danchenko. However, as detailed in Defendant's Motion to Dismiss, Mr. Danchenko never actually said that he met or spoke with Millian, but rather that he spoke with an anonymous caller who he believed was Millian. Accordingly, these emails are not relevant to the only relevant question – whether Mr. Danchenko made materially false statements to the FBI. Moreover, the emails are not more probative than testimony subject to cross-examination. Admitting these emails without allowing Mr. Danchenko the opportunity to cross-examine Millian would not serve the purposes of the Federal Rules of Evidence or the interests of justice, which are designed to ensure that cases proceed fairly and efficiently without undue prejudice and confusion. Accordingly, the Government has not and cannot prove that the emails are admissible pursuant to the residual hearsay exception.

Based on the foregoing, the Government has not and cannot prove that the emails from Millian to Zlodorev are admissible. The emails are hearsay and not admissible pursuant to any exception cited by the Government.

B.  The Government Has Not and Cannot Establish Any Basis to Admit the Statements That Christopher Steele Made to the FBI.

The Government also seeks to admit statements that Christopher Steele made to the FBI

23

claiming that Mr. Danchenko met with Millian.

When a testimonial statement is offered against a criminal defendant, the defendant has a constitutional right to confront the witness. *United States v. Arce*, No. 20-4557, 2022 WL 4102609, at *6 (4th Cir. Sept. 8, 2022) (citing *United States v. Benson*, 957 F.3d 218, 230 (4th Cir. 2020); *Crawford v. Washington*, 541 U.S. 36, 51, (2004)). A statement is testimonial when "a reasonable person in the declarant's position would have expected his statements to be used at trial – that is, whether the declarant would have expected or intended to bear witness against another in a later proceeding." *Id*. (citations omitted). Here, Steele made statements to the FBI, a law enforcement investigative agency. He had every reason to understand and believe that his statements were part of an ongoing law enforcement investigation and might be used in subsequent criminal proceedings against Mr. Danchenko and/or others. These testimonial statements by Steele are not admissible unless Mr. Danchenko can confront and cross-examine Steele at trial. This requirement is even more poignant where, as here, the Government clearly intends to use these statements to prove the truthfulness a central element of its case by arguing that these statements suggest that later statements by Mr. Danchenko are false.

Further, the Government paradoxically argues that these statements are not hearsay because they are being offered to prove the falsity, not the truth, of the statements. Specifically, the Government claims that it intends to offer these statements to prove that Mr. Danchenko never met in person with Millian. However, a statement is hearsay if it is offered to prove the **truthfulness** of the statement – regardless of whether the assertion is offered to prove the truth or falsity of the remark. *See In re Ent. Inc.*, 375 F. Supp. 390, 398 (E.D. Va. 1974). Here, no amount of semantic gamesmanship can hide or change the fact that the Government intends to offer the statements that Steele made to the FBI to prove the truthfulness of whether Mr. Danchenko

believes he spoke with Millian. Accordingly, those statements are inadmissible hearsay.

Based on the foregoing, the Government has not and cannot establish any basis to admit the statements Steele made to the FBI.

### III.    Only The Fact of The Prior Counterintelligence Investigation of Mr. Danchenko Should Be Admitted at Trial.

The government seeks to admit evidence, in its case-in-chief or to rebut a potential defense strategy, that Mr. Danchenko was previously the subject of an FBI counterintelligence investigation over 10 years ago. On this point, Mr. Danchenko generally agrees that the proffered evidence is admissible but likely disagrees about the extent of evidence that should be admitted at trial. It is not disputed that Mr. Danchenko was the subject of a counterintelligence investigation. Nor is it in dispute that the counterintelligence investigation was closed in 2011.  Likewise, it will not be in dispute that the FBI agents involved in the Crossfire Hurricane investigation were well aware of the prior counterintelligence investigation, that it was factored into their evaluation of Mr. Danchenko's credibility and trustworthiness, that an independent confidential source review committee accounted for the prior investigation when recommending the continued use of Mr. Danchenko as a confidential human source through December 2020, and that the agents involved in the prior investigation were consulted and ultimately raised no objections, at the time, to Mr. Danchenko's continued use as a source.

As an initial matter, those facts obliterate the government's argument that any alleged false statements were material to the government's ability to evaluate whether Mr. Danchenko could have been working for the Russians all along.  It would be one thing to argue that the Crossfire Hurricane investigators were not aware of the prior investigation and Mr. Danchenko failed to inform them of it when asked.  But, as one might expect, Mr. Danchenko was not aware of the investigation. He learned of it when then Attorney General William Barr made public a summary

of that investigation on September 24, 2020.  Moreover, it stretches credibility to suggest that anything else would have caused the FBI to be more suspicious of Mr. Danchenko's statements and his potential role in spreading disinformation than the very fact that he was previously investigated for possibly engaging in espionage on behalf of Russia.  Armed with that knowledge, however, and based on the substantial and "critical" information Mr. Danchenko provided to the FBI throughout his time as a source, the FBI nevertheless persisted.  The Special Counsel perhaps disagrees with that decision, but Mr. Danchenko's trial on five specific statements and this is not the place to air out the Special Counsel's dissatisfaction.

Mr. Danchenko himself intends to elicit from government witnesses their general knowledge of Mr. Danchenko's prior investigation. But the details of that investigation are not relevant and, more importantly, are *unproven*, would involve multiple levels of hearsay to establish the basis for the investigation let alone prove the allegation, and resulted in no negative action or conclusion. Indeed, the investigation was closed and to undersigned counsel's knowledge never reopened even after the Special Counsel's investigation and Indictment. Contrary to the Special Counsel's insinuations and allegations, we expect the jury will hear that Mr. Danchenko was a vital source of information to the U.S. government during the course of his cooperation and was relied upon to build other cases and open other investigations.  As one supervisory special agent has agreed, "one of the upshots [of the Crossfire Hurricane Investigation] has been a relationship with [Mr. Danchenko] which has provided the FBI insights into individuals and to areas that it otherwise was lacking [ ] because of the difficulty with which the FBI has in recruiting people from that part of the world." The agent further agreed that the FBI's relationship with Mr. Danchenko was "one thing that in terms of usefulness really did result from this [investigation]."

26

IV.   **Although Political Motivation Might Not Generally Be Relevant, The Court Should Allow Mr. Danchenko To Admit Evidence and Argument About Independently Relevant Matters Such as Witness Credibility or Investigative Tactics.**

Mr. Danchenko agrees that evidence and argument about political bias underlying this prosecution is generally irrelevant to the narrow, straightforward question of whether he made the materially false statements alleged in the Indictment. However, the adversarial trial process does not occur in a vacuum. The manner in which the Special Counsel framed the allegations in this case speaks for itself – an Indictment spanning 111 paragraphs spread across 39 pages replete with references to which political parties and campaigns various players supported, all to allege that Mr. Danchenko lied about two specific facts. Donald J. Trump copied and pasted many of the Special Counsel's allegations in his own civil RICO suit against Mr. Danchenko and numerous other defendants, which was dismissed with prejudice on September 8, 2022. *See Trump v. Clinton et al.*, 22-CV-14102 (S.D. Fla.). ECF 267. While any alleged political motivation underlying the decision to prosecute Mr. Danchenko is generally irrelevant, he does reserve the right to test the credibility, bias, motivation, and reliability of every witness offered against him.  He also reserves the right to question witnesses about the nature of the Special Counsel's investigative tactics when relevant and appropriate.

A Defendant cannot be barred from inquiring into the bias, prejudice, motivation, and credibility of an opposing witness, his prior inconsistent statements, or other facts which may have a reasonably direct bearing on the credibility of the witness and how his or her versions of events may have changed over time. *United States v. Jordan*, 466 F.2d 99, 105 (4th Cir. 1972) (Soboloff, J., dissenting); *District of Columbia v. Clawans*, 300 U.S. 617, 630-632, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *see United States v. Safavian*, 2008 WL 5255534, at *1 (D.D.C. Dec. 12, 2008) ("[S]ome questions . . . that touch on [vindictive or selective prosecution] also may go to the bias,

27

prejudice or credibility of a particular witness," and that the propriety of resulting inquiries are "on a continuum"); *United States v. Yagman*, 2007 WL 9724391, at *5 (C.D. Cal. May 16, 2007) ("Defendant is entitled to question the government's witnesses concerning their credibility, bias, and reliability"); *United States v. Stewart*, 2004 WL 113506, at *1-2 (S.D.N.Y. Jan. 26, 2004) ("defendants are, of course, free to raise questions about the credibility and reliability of cooperating witnesses.").

Based on the foregoing, Mr. Danchenko reserves the right to present evidence and argument concerning investigative tactics and the credibility, motivation, and bias of witnesses.

## CONCLUSION

Based on the foregoing, Defendant Igor Danchenko respectfully requests that this Court deny the Government's Motions *in Limine*.

Dated: September 16, 2022        Respectfully submitted,

IGOR DANCHENKO
By Counsel

_____/s/_____
Stuart A. Sears (VSB 71436)
Danny Onorato (Pro Hac Vice)
SCHERTLER ONORATO MEAD & SEARS, LLP
555 Thirteenth Street, NW
Suite 500 West
Washington, DC 20004
Ph: 202-628-4199
Fax: 202-628-4177
ssears@schertlerlaw.com
donorato@schertlerlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2022, I electronically filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send automatic notice of such filing to all counsel for record.

_____/s/_____
Stuart A. Sears (VSB 71436)
Danny Onorato (Pro Hac Vice)
SCHERTLER ONORATO MEAD & SEARS, LLP
555 Thirteenth Street, NW
Suite 500 West
Washington, DC 20004
Ph: 202-628-4199
Fax: 202-628-4177
ssears@schertlerlaw.com
