IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No. 1:21-CR-245 (AJT)** |
| | **:** | |
| **IGOR Y. DANCHENKO,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S REPLY TO DEFENDANT IGOR DANCHENKO'S OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

The United States of America, by and through its attorney, Special Counsel John H. Durham, respectfully submits this reply to the defendant's Opposition to the Government's Motions *In Limine* (Docket No. 84, hereinafter "Def. Opp."). For the reasons stated below, the Government submits that its motions *in limine* should be granted.

**I.     The Government's Proffered Evidence of Uncharged Conduct is Admissible as Direct Evidence of the Crimes Charged, and Alternatively, under Federal Rule of Evidence 404(b)**

The Government moves to admit three instances of uncharged conduct: (1) the defendant's statements regarding his purported receipt of information reflecting Donald's Trump's alleged salacious sexual activity at the Ritz-Carlton Hotel in Moscow; (2) the defendant's false statements to the FBI reflecting the fact that he never informed friends, associates and/or sources that he worked for Orbis or Christopher Steele; and (3) the defendant's email to his former employer, in which the defendant advised the employer, when necessary, to fabricate sources of information. As addressed below, this evidence is admissible as direct evidence of the crimes charged, because it is "necessary to complete the story of the crime on trial," and it is "inextricably intertwined[,] with the crime charged." *United States v. Stitt*, 250 F.3d 878, 888 (4th Cir. 2001); *United States v.*

*Chin*, 83 F.3d 83, 88 (4th Cir. 1996) (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)).  Alternatively, the uncharged conduct evidence is admissible under Rule 404(b), as each category of evidence is relevant, "necessary," or probative of an element of the charged crimes, reliable, and not unduly prejudicial. *United States v. Johnson*, 617 F.3d 286, 296-97 (4th Cir. 2010) (outlining the four factored test for Rule 404(b) evidence (quoting *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997))

In opposing this motion, the defendant accuses the Government, *inter alia*, of "misrepresenting the facts," Def. Opp. at 9, being "plainly disingenuous," *id.* at 10, "conceal[ing] matters] from the Court," *id.* at 17, and engineering a "prejudicial sideshow," *id.* at 16.  However, as detailed below, these accusations are unfounded and distract from the fact that the proffered evidence is plainly admissible either as direct evidence, or alternatively, pursuant to Rule 404(b).

A.    **The Defendant's Statements to the FBI Regarding Donald Trump's Alleged Salacious Sexual Activity at the Ritz-Carlton Hotel in Moscow Demonstrate the Defendant's Intent to Misdirect the FBI from Dolan**

With respect to the Ritz Carlton allegations, the defendant argues that the Government has "misrepresented" the facts as to where the defendant first learned of these allegations against Donald Trump.  *See* Def. Opp. at 9.  The defendant states that he informed the FBI that he first learned of the allegations from a friend, "I.V.," and then later attempted to confirm the allegations with hotel managers in June 2016.  This argument is nothing more than a red herring designed to deflect attention from the most salient aspect of this issue – that the Steele Reports and the defendant himself asserted that he (the defendant) met with the hotel managers of the Ritz Carlton and discussed these allegations in June 2016.  As an initial matter, from whom or when the defendant first purportedly learned of these allegations is of no moment for deciding the evidentiary issue before the Court.  Again, what is material is the fact that the defendant

2

informed the FBI on two separate occasions (January and May 2017) that he had spoken with hotel managers from the Ritz Carlton about these allegations.  The defendant further told the FBI in May 2017 that he "gave Steele the names" of the hotel managers.   The Government intends to present evidence that undermines the defendant's claim that he met with the hotel managers about this issue.

More specifically, and as discussed in it moving papers, the Government expects to call Bernd Kuhlen as a witness.  Mr. Kuhlen was the general manager of the Ritz Carlton at the time the defendant allegedly visited the hotel in June 2016.[1]  The Government anticipates that Kuhlen, a German citizen and non-Russian speaker, will testify to, among other things, (1) that he has no recollection of meeting with the defendant; (2) that he has no knowledge of the salacious allegations the defendant attributed to him (or that he allegedly confirmed); (3) that he does not recall discussing such allegations with other managers, and (4) that he was the only "western" senior staff member at the hotel.  Given that *the defendant* provided the names of the hotel managers to Steele, the Government intends to prove at trial that Kuhlen was the only senior "western" member of staff.

The defendant's statements about Kuhlen – and the other managers – are highly material to the charges in the Indictment because they directly relate to the defendant's alleged false statements about Sergei Millian and Charles Dolan.

---

[1] In his January 2017 interview, the defendant falsely stated that he was a guest at the hotel in June 2016, but corrected his version of events in May 2017.  It strains credulity, however, to believe that Ritz Carlton managers – with no apparent relationship to the defendant – would confirm lurid sexual allegations about a U.S. presidential candidate to a guest, let alone a stranger off the street.

As to Millian, the defendant's arguments are unavailing.  The defendant argues that when he made statements to the FBI that "Source D" in the Dossier reports "could be referring" to Sergei Millian, he was merely speculating that *Steele* (not Danchenko) might have *believed* incorrectly that "Source D" was Millian.  Thus, the defendant argues, he (Danchenko) did not seek to misattribute information from the June 2016 Steele Report to Millian but, rather, told the FBI on other occasions that the information came from his friend, "I.V."  But the defendant's argument raises serious questions about the veracity of this theory, including, (1) Why did the defendant simply not *say* to the FBI in this exchange that Steele (not Danchenko) may have *incorrectly believed* "Source D" to be Millian? (2) why did the defendant state only that it could be referring to Millian or "someone like" Millian, without divulging who actually provided the information attributed to "Source D?" (3) why would Steele have any reason to believe or assert that Source D was Millian if the defendant -- his primary and perhaps only collector of information for the Reports -- did not reach out to Millian until July 2016, a month after the relevant report was published?[2]  In any event, the jury is entitled to hear evidence and evaluate the credibility of that statement because it relates directly to Millian, whose purported role in these matters is the central factual issue underlying several counts in the Indictment. Accordingly, for the reasons set forth in the Government's moving papers, statements and evidence concerning Sergei Millian's role in these issues should be admitted as direct evidence, or in the alternative, pursuant to Rule 404(b).

Evidence concerning the Ritz Carlton allegations is also admissible because it sheds light on the defendant's false statements about Charles Dolan.  Such facts are highly material to the

---

[2] The Government plans to introduce evidence that the defendant was the primary source of information for the Steele Reports writ large, including his own statement on LinkedIn that he gathered "most of the raw intel for Chris Steele's Dossier in the Spring/Summer of 2016."

Government's case because Charles Dolan, a source for information in the Steele Reports, was present in Moscow in June 2016 *at the same time* the defendant was allegedly gathering information for the Steele Reports, (2) had lunch with the defendant in Moscow in June 2016, (3) spoke with the Ritz Carlton hotel managers in June 2016, and (4) took a tour of the Ritz Carlton in June 2016.  Whether or not Dolan received any information about Trump's purported salacious activities from hotel staff (he will testify that he did not), he was an important fact witness who should have been of significant interest to the FBI's understanding of these matters. Again, as laid out in its moving papers, the Government anticipates that Charles Dolan will testify, in sum, that he (Dolan) along with Steven Kupka, attended lunch with Bernd Kuhlen and two other female hotel staffers in June of 2016.   The Government further expects that Dolan will testify that the defendant was not present for this lunch or the subsequent tour of the Ritz Carlton provided by the two female staffers.[3]   In the January 2017 interviews, the defendant *never* mentioned Charles Dolan.   Further, during the defendant's June 2017 interview with the FBI (which forms the basis of the false statement charge related to Dolan), the defendant only informed the FBI that he was present with Dolan during the October 2016 YPO conference. Again, the defendant conveniently whitewashed Dolan from the June 2016 planning trip in Moscow.  This fact is highly material because in the January 2017 interviews, the defendant informed the FBI that he had gathered information for the Steele Reports during the June 2016 trip but *did not* gather any information during the October 2016 trip.   This evidence is highly probative of the defendant's efforts to conceal Dolan's proximity to the defendant at the time he (the defendant) was collecting information for the Steele Reports.

---

[3] In fact, the Government anticipates that Dolan will testify that he has no recollection of seeing the defendant at the Ritz Carlton in June 2016.

As discussed in its moving papers, Dolan's role as a contributor to the Steele Reports was highly relevant and material to the FBI's evaluation of those reports because, among other things, (1) Dolan maintained a relationship with several high-ranking Russian government officials who appear in the Steele Reports, (2) Dolan maintained a relationship with another of the defendant's alleged sub-sources, (3) Dolan was present in Moscow with the defendant when the defendant allegedly gathered some of the information reflected in the Steele Reports, and (4) Dolan's historical and ongoing involvement in Democratic politics had the potential to bear on his reliability, motivations, and potential bias as a source for the Steele Reports.   Accordingly, this evidence is properly admitted as direct evidence because it provides the jury with context about Dolan, including his relationship with the defendant at a time when the defendant was allegedly collecting information that would later be reflected in the Steele Reports.  *See United States v. Marfo*, 572 F. App'x 215, 225 (4th Cir. 2014) (evidence is "relevant and necessary" when it provides context to the relationship between individuals central to the charged crime). Alternatively, the evidence is properly admitted under Rule 404(b) as evidence of the defendant's "common plan" and "intent" to deceive the FBI about Charles Dolan's role as a source for the Steele Reports.  *See United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003) (Rule 404(b) evidence properly admitted when it "shows a pattern of operation that would suggest intent.").

B.      **The Defendant's Statement to the FBI About Not Disclosing His Work for Orbis and/or Steele with Others Further Demonstrates the Defendant's Intent to Misdirect the FBI from Dolan and Others**

Next, the defendant argues that evidence of the defendant's false statement's regarding his disclosure of his work for Orbis and/or Steele should not be admitted because "it is simply insincere to suggest that Mr. Danchenko's alleged failure to indicate that Dolan knew that Mr.

6

Danchenko did work for Orbis frustrated any FBI investigation in light of all the information Mr. Danchenko provided to the FBI." Def. Opp. at 17. In support of this argument, the defendant states that, in fact, the defendant did tell the FBI about Charles Dolan, including (1) about the Moscow trips with Dolan, (2) that Steele knew of Dolan, (3) that the defendant had introduced Dolan to Olga Galkina, and (4) that Dolan had relationships with high-level Kremlin officials. *Id.*

*First*, as discussed above, the defendant did not inform the FBI that Dolan was present at the Ritz Carlton in June 2016. Again, this is a material omission because the defendant informed the FBI that he collected information for the Steele Reports in June 2016, but not during the October 2016 trip. Dolan's proximity to the defendant during this time period is a highly relevant fact.

*Second*, when the defendant was asked "would Chris know of [Dolan]?" the defendant replied "I think he would . . . . because I cleared my [October] trip with Chris." However, as discussed in the Government's moving papers, the defendant (1) attempted to broker business between Steele and Dolan, (2) provided Dolan with a copy of his Orbis work product, and (3) apparently informed Dolan of Steele's former employment with MI-6.

*Third*, while the defendant did introduce Dolan to Ms. Galkina, the Government anticipates introducing evidence through the defendant's handling agent that the defendant was unaware of the extent of communication between Dolan and Galkina. This is a highly material fact given that both Dolan and Galkina are alleged to have been sources for the Steele Reports.

*Fourth*, while the defendant did inform the FBI that Dolan maintained contacts with high-level Kremlin figures, including Press Secretary Dimitry Peskov, he notably failed to inform the FBI that Dolan had reached out Peskov and his deputy (both of whom appear in the Steele

Reports) and others during the course of YPO preparation.  Further, the defendant failed to inform the FBI that Dolan maintained a relationship with U.S.-based diplomats Sergei Kislyak and Mikail Kalugin, both of whom appear in the Steele Reports.  And Kalugin attended the YPO conference in October 2016, yet another fact conveniently omitted by the defendant.

The Government respectfully submits that the jury should be presented with evidence reflecting the full picture of the defendant's false statements and omissions regarding the disclosure of his work for Orbis and/or Steele.[4]  *See Marfo*, 572 F. App'x at 225 (evidence is "relevant and necessary" when it provides context to the relationship between individuals central

---

[4] Additional statements made by the defendant which contradict his claim about not informing his friends, associates and/or sources about his work for Orbis and/or Steele include, but are not limited to:

- "Hey Cenk!  Happy New Year again!  Saw you yesterday - just like **we saw Chris S.** once on the Strand."  (emphasis added) (*Danchenko Facebook, message dated January 5, 2017*).  This message was sent less than three weeks prior to the defendant's January 2017 interviews with the FBI.  The Government intends to call Mr. Sidar, the defendant's former employer, at trial.  The Government anticipates that Mr. Sidar will testify that he was aware of the defendant's work for Christopher Steele and Orbis and attempted to broker business between Sidar and Orbis.

- "Hi [Name Withheld], Sorry I missed the event with [Name Withheld]. I didn't get to Central London until 1930.  I'll try to deliver the books this afternoon.  If I don't manage, **one of my mates from Orbis BI** will tomorrow. (I am with luggage off to Surrey tonight, to Edinburgh tomorrow). Best, I".  (emphasis added) (*Danchenko Facebook, message dated January 27, 2016*).

- "I'll be back to business trips in April-May, I think.  Guess, things are good.  What you see on social media is pretty much how things are.  **The rest is Orbis BI** and a bit." (emphasis added) (*Danchenko Facebook, message dated March 22, 2016*).

- On May 13, 2016, the defendant sent a photo of an Orbis business card to Olga Galkina. (*Danchenko Facebook, message dated May 13, 2016*).

- "Maybe. Work to do **for Chris** who's probably coming to DC on Wednesday. . . ." (*Danchenko Facebook, message dated September 18, 2016*).  Christopher Steele, in fact, did travel to Washington D.C. on September 21, 2016.

to the charged crime).   Alternatively, this evidence is properly admitted pursuant to Rule 404(b) to prove that the defendant engaged in an over-arching "plan" to deceive the FBI about the manner and methods by which he conducted his work for Orbis (including the collection of information contained in the Steele Reports.)   Indeed, had the defendant been truthful about the widespread disclosure of his work for Steele and Orbis, it is highly likely the FBI would have conducted interviews of those individuals in an effort to determine whether the information provided by the defendant was accurate, false, or a product of Russian disinformation.

C.      **The Defendant's Email to His Former Employer Advising Him to Fabricate Sources Falls Squarely within Rule 404(b)**

The defendant next argues that his email to former employer Cenk Sidar should not be admitted pursuant to Rule 404(b) "because the question of whether Mr. Danchenko encouraged Sidar to emphasize the sources for information contained in a Sidar Global report that was entirely unrelated to the Steele Dossier has absolutely nothing to do with the narrow, straightforward charges in the Indictment."   Def. Opp. at 19.   As an initial matter, the defendant did more than simply instruct Mr. Sidar to "emphasize sources."   Rather, the defendant advised Mr. Sidar to "use oneself as a source . . . to save the situation and make it look a bit better."   In any event, the defendant seems to misunderstand Rule 404(b).   The fact that the Sidar email is "unrelated" to the Steele Reports is of no moment.   Indeed, Rule 404(b) contemplates "*other* crimes, wrongs or acts." Fed. R. Evid. 404(b) (emphasis added).   Accordingly, the Sidar email falls squarely in the category of evidence that proves a common "plan," intent, and a lack of mistake or accident because it demonstrates that the defendant's misattribution of sources was an intentional feature of his business intelligence work, including his work for Christopher Steele and Orbis. The Government respectfully submits that this email is paradigmatic 404(b) evidence.

## II.     The Questions Posed by Millian in His Emails are Not Hearsay

Contrary to the defendant's assertions in his response to the Government's motion, the questions posed by Sergei Millian to Dimitry Zlodorev are not hearsay.  To the contrary, they are "requests for information" that cannot be construed as an assertion by Millian.  *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008) (concluding that a witness's questions were not hearsay because they were requests for information and not assertions).  Indeed, as the Fifth Circuit has noted:

> While "assertion" is not defined in the rule, the term has the connotation of a positive declaration.  The questions asked by the unknown caller, like most questions and inquiries, are not hearsay because they do not, and were not intended to, assert anything.

*United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990).  In *Sinclair*, a witness asked questions directed at getting information about a shooting ("who shot him?").  The *Sinclair* court held that these questions were merely requests for information that could not be intended as assertions. *Sinclair*, 301 F. App'x at 253.   Likewise, Millian is requesting information about the defendant – "Who is that?"; "What type of person?"; "who is Igor Danchenko?"  No reasonable interpretation of this email supports defendant's contention this question was intended as an assertion.  Indeed, the defendant seems to misapprehend the relevant standard when he assumes questions are inadmissible hearsay whenever the *Government* intends to ask the jury to infer facts from those questions.  What matters, however, is whether *Millian* intended the questions to be *assertions*, and there is no evidence of such intent whatsoever.  Thus, the defendant's argument that Millian's questions should be construed as an implied assertion is a proposition unsupported by law.  *Lewis*, 902 F.2d at 1179 (holding that "Rule 801, through its definition of statement, forecloses appellants' argument by removing implied assertions from the coverage of the hearsay rule."  Court denied defendant's implicit assertion argument that the question "did you get that stuff" implied that the

10

defendants were expecting "stuff").   Accordingly, Millian's questions concerning the defendant

are not hearsay.

### III.     The Facts and Circumstances of the Prior Counterintelligence Investigation of the Defendant Should be Admitted

The defendant asks the Court to limit the admissibility of evidence concerning the FBI's

prior counterintelligence investigation of the defendant to only the fact that there was an

investigation.   Limiting the evidence in this manner would improperly give the jury the false

impression that the investigation closed due to a lack of evidence against the defendant.   As

discussed in its moving papers, the Government believes the facts underlying the investigation are

admissible as direct evidence because in any investigation of potential collusion between the

Russian Government and a political campaign, it is appropriate and necessary for the FBI to

consider whether information it receives via foreign nationals may be a product of Russian

intelligence efforts or disinformation.   And in doing so, the FBI must consider the actual facts of

the prior investigation.   Had the FBI known at the time of his 2017 interviews that the defendant

was providing them with false information about the sourcing of his claims, this naturally would

have (or should have) caused investigators to revisit the prior counterintelligence investigation and

raise the prospect of revisiting prior conduct by the defendant, including his statements to a

Brookings Institute colleague regarding receipt of classified information in exchange for money

and his prior contact with suspected intelligence officers.   Whether or not the defendant *did or did*

*not* carry out work on behalf of Russian intelligence, these specific facts are something that any

investigator would or should consider and, therefore, the jury is entitled to learn at trial about the

facts of the prior investigation in assessing the materiality of the defendant's alleged false

statements. The  defendant  should  not  be  permitted  to  introduce  the  existence  of  the

11

counterintelligence investigation for his benefit while suppressing the details of his conduct at issue in that very investigation.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Government's motions *in limine*.

Respectfully submitted,

JOHN H. DURHAM
Special Counsel

By:

/s/_____
Michael T. Keilty
Assistant Special Counsel
michael.keilty@usdoj.gov

Brittain Shaw
Assistant Special Counsel
brittain.shaw@usdoj.gov

**<u>Certificate of Service</u>**

I hereby certify that on the 23rd day of September, 2022, I electronically filed a copy of

the foregoing with the Clerk of the Court using the CM/ECF system, which will send a

notification of such filing (NEF) to all counsel of record.

By:

 /s/_____
Michael T. Keilty
Assistant Special Counsel
michael.keilty@usdoj.gov