1044

```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3   ------------------------------x.
                                   :
 4   UNITED STATES OF AMERICA,     : Criminal Action No.
                                   :
 5                   Plaintiff, : 1:21-cr-245
                                   :
 6           versus               : October 14, 2022,
                                   :
 7   IGOR Y. DANCHENKO,            :
                                   : Volume 4 (PM Session)
 8               Defendant. : Pages 1044 - 1091
     ------------------------------x
 9
                       TRANSCRIPT OF JURY TRIAL
10          BEFORE THE HONORABLE ANTHONY J. TRENGA
                  UNITED STATES DISTRICT JUDGE
11
                    A P P E A R A N C E S
12
      FOR THE GOVERNMENT:    DOJ-USAO
13                           JOHN DURHAM, AUSA
                             MICHAEL T. KEILTY, AUSA
14                           DEBORAH SHAW, AUSA
                             145 N Street, NE
15                           Suite 3e.803
                             Washington, D.C. 20002
16
      FOR THE DEFENDANT:     SCHERTLER ONORATO MEAD & SEARS,
17                           LLP

18                           STUART ALEXANDER SEARS, ESQ
                             555 13th Street, NW, Suite 500
19                           Washington, DC 20004

20                           DANNY ONORATO, ESQ. (DC-NA)
                             901 New York Avenue NW, Suite 500
21                           Washington, D.C. 20001

22

23
     OFFICIAL U.S. COURT REPORTER:   MS. TONIA M. HARRIS, RPR
24                                   United States District Court
                                     401 Courthouse Square
25                                   Fifth Floor
                                     Alexandria, VA 22314
```

─United States v. Danchenko─

1045

1  TABLE OF CONTENTS
TRIAL WITNESSES

2
NO AFTERNOON WITNESSES

3
MISCELLANY

4
Preliminary matters................................. 1046
5  Rule 29 arguments.................................. 1048
Court's ruling..................................... 1064
6  Certificate of Court Reporter...................... 1075

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─────────────── United States v. Danchenko ───────────────

1046

1    **A F T E R N O O N   P R O C E E D I N G S**

2    (Court proceedings commenced at 2:03 p.m.)

3              THE COURT:  Ready to proceed?

4              MR. SEARS:  Yes, Your Honor.

5              THE COURT:  All right.  Let's bring the witness in.

6              (Witness seated.)

7              (Jury present.)

8              THE COURT:  Please be seated.  Mr. Sears, any cross?

9              MR. SEARS:  It's a little anti-climatic, Your Honor,

10   but I have no questions for this witness.

11             THE COURT:  All right.  Thank you.  You may return

12   to the counsel table.

13             Government, call its next witness.

14             MR. DURHAM:  Your Honor, respectfully, the

15   government rests its case.

16             THE COURT:  All right.  Ladies and gentlemen, I'm

17   going to excuse you back to your jury room.  I hope to bring

18   you out here shortly and let you know where we are.  All

19   right.  You'll be returned to the jury room.

20             (Jury dismissed.)

21             THE COURT:  All right.  Mr. Sears.

22             MR. SEARS:  Your Honor, before I make our Rule 29

23   motion, I did want to advise the Court that we moved into

24   evidence, earlier, Exhibit 420T, which is a translated version

25   of 420.  We did not specifically move in 420.  I think the

United States v. Danchenko

1047

1    common practice throughout this trial was to admit both

2    documents.

3                THE COURT:  Yes.

4                MR. SEARS:  And for that reason, we would seek to

5    admit 420 as well, and I don't think there's any objection.

6                MR. DURHAM:  No objection.

7                THE COURT:  Without objection, 420 is admitted.  I

8    have it already.  We'll make sure it's in.

9                Before we do Rule 29s, given what we talked about,

10   is there any need to retain the jury further or should I

11   excuse them till Monday?

12               MR. DURHAM:  The government's view would be they

13   could be released now.  It's fine.

14               THE COURT:  I don't see any reason to keep them; do

15   you?

16               MR. SEARS:  I don't want to be the reason to keep

17   them here late on a Friday, Your Honor.  We're okay with you

18   sending them home as well.

19               THE COURT:  All right.  Why don't we bring them back

20   in.

21               (Jury present.)

22               THE COURT:  Please be seated.  Ladies and gentlemen,

23   we're at the point where I need to take up some matters with

24   counsel outside of your presence, and there's -- as I

25   mentioned, the government's completed its case, and at this

─────United States v. Danchenko─────

1048

1   point, there'll be nothing further for you to do this

2   afternoon.  So I hate to disappoint you, but I'm going to

3   release you early for the weekend, and you're to report here

4   on Monday at 9:30, at which time I think we'll be in a

5   position to proceed with the jury instructions and closing

6   argument.

7           So with that, you're excused for the weekend.

8   Again, please do not discuss this case with anyone outside of

9   the courtroom.  Don't do any research.  Don't do any social

10  media, communicating; and if you happen to find yourself

11  exposed to any radio or television coverage of this trial,

12  please try to excuse yourself from listening to any of that.

13          So with that, enjoy the weekend and I'll see you

14  Monday morning.

15          (Jury excused.)

16          THE COURT:  All right.  Mr. Sears.

17          MR. SEARS:  Thank you, Your Honor.  I won't insult

18  you with the standard at this stage in the proceeding.

19          Obviously, the Court is aware of what inferences it

20  must take in favor of which party, but as the Court is aware,

21  the Court also has to make a determination as to whether any

22  reasonable juror could find the elements the government was

23  required to prove beyond a reasonable doubt.

24          And we've previewed the issues we expected to be

25  arguing today in our motion to dismiss.  At that time, the

United States v. Danchenko

1049

1    Court had not seen any of the evidence.  Obviously, now the

2    Court has seen all of the government's evidence; and in our

3    opinion, Your Honor, our arguments that we argued in the

4    motion to dismiss are actually stronger now at the close of

5    evidence.

6            Starting with the Chuck Dolan count, Count 1 in the

7    indictment, the government's case fails for a reason it didn't

8    when we argued the motion to dismiss, which is that there is

9    no evidence at this trial that Mr. Danchenko has ever seen

10   Report 105.

11           And that's the only report in this case where any

12   information that could have come from Chuck Dolan or could

13   have been sourced to Chuck Dolan, even though it was public

14   information, that's the only report that contained that

15   information.

16           So it's -- if he's never seen it, there's no way he

17   would ever even know whether anything that he received from

18   Chuck Dolan ended up in the dossier.

19           They completely failed to prove that Mr. Danchenko

20   was ever even aware of that report or ever reviewed it.  For

21   that reason alone, that case should be out at this point.

22           The second point I'm at, which is what we thought

23   was the strongest point when we argued the motion to dismiss,

24   is that Mr. Danchenko was asked whether he had ever talked to

25   Mr. Dolan about anything that ended up in the dossier.

─────United States v. Danchenko─────

1050

1    And he said, No, I didn't talk to anything about --

2    anything specific with him, only something general.  Chuck

3    Dolan testified that he never talked to Mr. Danchenko about

4    anything that ended up in the dossier.

5    Kevin Helson, who was on the stand yesterday, said

6    that if it was true that Mr. Danchenko had never talked to

7    him, his answer to the question he asked him was literally

8    true.  That was his testimony.  That's the testimony of the

9    government's witnesses in this case.

10   Even if the government is going to argue that he

11   should have known by "talked," that that meant any form of

12   communication of any kind, or because the FBI was interested

13   in learning everything they possibly could, he no longer had

14   to just answer the questions he was asked, he had to answer

15   every question he wasn't asked, it doesn't make his statement

16   untrue.

17   He said he didn't talk to him about anything in the

18   dossier, and the government's own evidence has established

19   that they never even argued to the contrary.  They never

20   presented any evidence to the contrary of that, and they would

21   be required to prove some way that his answer to that question

22   is untrue or would not be true, and they can't.

23   And so, from my perspective -- I said it wasn't a

24   close call at the motion to dismiss; Your Honor said it was a

25   close call -- I believe even stronger today, particularly

United States v. Danchenko

1051

1  because of the lack of evidence of his knowledge of Report

2  105, that that count cannot go forward.  No reasonable juror

3  could find beyond a reasonable doubt that his statement that

4  he did not talk to Charles Dolan on this evidence was false.

5          With regard to Sergei Millian, Your Honor, the

6  government had to -- the first thing the government had to

7  establish was that Mr. Danchenko never received an anonymous

8  call in late July of 2016.  They haven't done that.  I don't

9  know that they can do that.

10          They produced phone records, but there's also a

11  stipulation, 1810, in this case that says that communications

12  that came through a messaging app would not show up on a phone

13  record.  The evidence is pretty clear that Mr. Danchenko

14  recalled receiving that mess- -- that call through a messaging

15  app, and they have not proven and they cannot prove that he

16  didn't.

17          Mr. Danchenko not only didn't have all the

18  information on his phone, at the time he was being interviewed

19  by the FBI, months and months later, Agent Helson told him to

20  wipe his phone clean at one point while he was cooperating,

21  and the government has no evidence to show that they can look

22  at whatever messaging apps he was using.

23          There's no evidence that someone could -- a

24  reasonable juror could find that he absolutely did not, beyond

25  a reasonable doubt, did not receive an anonymous call.  And if

─────United States v. Danchenko─────

1052

1  they can't prove that, which they were required to prove,

2  that's game over on those counts, all four of those counts,

3  and they haven't been able to prove it.

4           Now, if they're not able to prove that, then the

5  next thing they have to prove is that it would have been

6  unreasonable, if he did receive one, to believe that that

7  caller would have been Sergei Millian.  And, frankly, we're in

8  a stronger position now, after the government's investigation,

9  that it was perfectly reasonable for him to believe that if he

10 did receive an anonymous call that week in July, that it was

11 Sergei Millian.

12          Your Honor, the government's evidence in this case

13 is that he went to New York that week.  The Amtrak records

14 confirmed what he told them back in January.  The government's

15 records also show the Amtrak records of him traveling there.

16          They also show communication on the day of July 28th

17 where he says "another meeting tonight."

18          The evidence also shows that Sergei Millian, just by

19 chance, happened to be arriving in New York City on the

20 evening of July 27th, the night before Mr. Danchenko thought

21 he was having a meeting that night.

22          It's perfect -- whether they think he should have

23 believed it or not, no reasonable juror could find under that

24 evidence that it was unreasonable for him to believe it could

25 have been Sergei Millian, and that's what they're being asked

──────United States v. Danchenko──────

1    to decide.

2         And I just don't see how any reasonable jury could

3    find beyond a reasonable doubt -- even the agents testified,

4    If you had known this information that the Special Counsel

5    didn't show you, you would agree that tends to corroborate his

6    belief about who that caller was?  And they agreed with that.

7         And so while there is a lot of evidence in this

8    case, on the most crucial points of what the government has

9    had to prove, they don't have the evidence to convince a

10   reasonable juror beyond a reasonable doubt.

11        And the last point I'll make, Your Honor, as to

12   materiality, certainly with regards to the Millian counts, it

13   didn't matter what he said about whether that caller was

14   Sergei Millian or not or whether he didn't know.

15        Christopher Steele -- the evidence is in the record

16   -- had indicated that Mr. Danchenko had met with Sergei

17   Millian on multiple occasions.  The FBI had a full

18   investigation into Sergei Millian months before they ever knew

19   who Mr. Danchenko was.

20        There's no way that if Mr. Danchenko had waltzed in

21   and said, No, never happened, I made the whole thing up, they

22   would have said, Okay, we're going to believe this guy and

23   we're going to shut down the investigation.  It wasn't capable

24   of influencing their decision no matter what he said to that

25   answer.

United States v. Danchenko

1054

1    And for those reasons, Your Honor, this nightmare of

2  a case for Mr. Danchenko and his family, it should end today

3  and it should end now.  Thank you.

4    THE COURT:  Mr. Durham.

5    MR. DURHAM:  May it please the Court.  The

6  government won't burden Your Honor with the standard either

7  because it's well known what the Rule 29 burden is.

8    With respect to the evidence, taken in the light

9  most favorable to the government, that has been presented,

10  respectfully, the essential elements, as the Court will

11  instruct the jury, have been met.

12    Counsel makes reference to Count 1 and suggests that

13  the evidence has to show -- or what we're required to prove

14  was that the FBI had shown Mr. Danchenko the dossier report

15  2016/105.  That's not what's required.  The requirement would

16  be whether or not when the defendant was asked the question

17  and the question was posed to him relating to Mr. Dolan, as

18  set forth in paragraph 102 of the indictment, it's whether or

19  not within the Eastern District of Virginia, Mr. Danchenko

20  willfully and knowingly made a material false statement on or

21  about June 15, 2017, and that he denied to the agents of the

22  FBI that he had spoken with, in the indictment, PR Executive 1

23  about material contained in the company's reports.

24    The evidence in the case reflects that Mr. Millian's

25  information -- I'm sorry -- the information related to

──United States v. Danchenko──

1055

1    Mr. Dolan is clearly contained in the dossier report.

2            And the evidence shows that with respect to the FBI

3    meeting with Mr. Danchenko on January 24, 25th and 26th, he,

4    in fact, had his own copy of the dossier reports with him.

5    The evidence further reflects that --

6            THE COURT:  They had been published by then,

7    correct?

8            MR. DURHAM:  Pardon me?

9            THE COURT:  They had been published by then?

10           MR. DURHAM:  At that point, the reports had been

11   published.

12           THE COURT:  Right.  All right.

13           MR. DURHAM:  So he had those reports -- just, again,

14   so he was being interviewed in January --

15           THE COURT:  January.  Right.

16           MR. DURHAM:  -- of 2017.

17           THE COURT:  Right.  Right.

18           MR. DURHAM:  And they had been published then at

19   that point.  And with -- so he had them himself when the

20   January 2017 interviews occurred.

21           THE COURT:  Right.

22           MR. DURHAM:  The testimony included not only did he

23   have his own copies of the reports, but Mr. Auten, in

24   particular, had noticed that there were some -- there was some

25   writing and so forth that were on those reports at the time.

─────────────United States v. Danchenko─────────────

1056

1    So, I mean, he clearly had the reports, and it would

2    be reasonable to infer from that, as he was preparing for the

3    information to be elicited by the FBI, that he reviewed them.

4    But separate and apart from that, the evidence also reflects

5    that with respect to those reports, when he, Mr. Danchenko,

6    first met with Mr. Helson on March 16th in a recorded

7    conversation, the defendant had his own copies of the reports.

8    And not only did he have his own copies of the

9    report, but he said, and it's reflected in the transcript of

10   the first excerpt that we had played, that he had reviewed

11   them in preparation for the meeting.

12   I don't want to misstate what was in the transcript,

13   but the transcript makes it abundantly clear that he had

14   prepared for the meeting with Helson on March 16th and had his

15   copies of the dossier reports.

16   So it certainly would be reasonable to infer, to the

17   extent that our burden was to prove that he knew that it was

18   in the report, that he had the reports, and he had reviewed

19   them on multiple occasions beforehand.

20   With respect to the defendant's second point as it

21   relates to the Dolan count, that is, you know, whether what

22   Mr. Danchenko told the agent in response to the question posed

23   to him, respectfully, I believe that the case law does require

24   that one look to the context in which the statement was made.

25   And with respect to the context in which the

─────────United States v. Danchenko─────────

1057

1    statement was made, I mean, we inquired of Mr. Auten, not

2    extensively, but I mean, we asked multiple questions, what it

3    was that the defendant was told concerning what the agents are

4    looking for, sourcing information, how critical it was, any

5    information at all that he had relating to that.

6           We introduced, and the Court admitted into evidence,

7    the immunity agreement, which sort of codifies what the

8    understandings were.  No admission -- no omissions, no false

9    statements, not trying to protect anybody, and the like.

10          And, similarly, when Mr. Helson testified on that

11   same point, he, again, testified to the context in which this

12   was -- these questions were being asked, how clear that he and

13   others had made it to Mr. Danchenko about what they were

14   looking for, that Mr. Danchenko had previously provided, that

15   is prior to June 15th of 2017, had provided other documents

16   and records that he had.

17          So in that context, in understanding in that context

18   what the question was, it certainly is reasonable to believe

19   he understood what the agents are asking for, and not the sort

20   of narrow isolation of the word "talk," but much broader than

21   that.

22          And I believe that the case law that we had provided

23   to the Court previously in the motion to dismiss talks about

24   that being a jury question.  And so, we respectfully submit

25   that that's where that should be.  It should be resolved by

─────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────────

EASTERN DISTRICT OF VIRGINIA

───────United States v. Danchenko───────

1058

1   the jury.

2           As to the Sergei Millian counts, with respect to

3   counsel's argument, the government doesn't have to prove to it

4   100 percent certainty that the defendant, you know, didn't

5   believe that he had got a call from Millian or that a call had

6   come in.

7           But with respect to the evidence that was presented

8   on that point, the available records clearly established that

9   from July 20th until the end of August of 2016, there was no

10  incoming number or incoming call to Mr. Danchenko's number

11  from any unaccounted for number.

12          The evidence also establishes that the FBI, or at

13  least the investigators involved in this matter, diligently

14  went through and identified the subscriber or the person

15  associated with a phone number.  We explained how that

16  happened.

17          The bottom line being that there was never a call

18  received during the pertinent period of time on

19  Mr. Danchenko's phone that would match his description of what

20  he told the FBI at the various times that are outlined or

21  stated in the respective Millian counts of the indictment.

22          Now, with respect to the reasonableness question,

23  counsel made reference to the fact that -- well, there are

24  Amtrak records showing he went to New York.  Well, what's the

25  more complete evidence on that?

─────United States v. Danchenko─────

1059

1    The complete evidence on that is at least as early

2    as July 18th, Mr. Danchenko was planning on going to New York.

3    It didn't have anything to do with an anonymous call.  That

4    was already preplanned.

5         And similarly, with regard to the July 21st email,

6    it is clear that Mr. Danchenko was planning on being in New

7    York the next week.

8         And, in fact, the indictment -- I'm sorry -- the

9    email doesn't suggest anything other than, Hey, I could meet

10   you in New York, I could meet you in Washington, and I happen

11   to be in New York next week, which doesn't support the

12   proposition, Well, we ran and immediately bought a ticket and

13   jumped on a train because of this phone call.  Or at least

14   that's a question for the jury to resolve as well.

15        And then, in terms of overall reasonableness, it

16   certainly would be a matter that the jury would want to

17   consider is appropriately a -- consider in this context --

18   doesn't make any sense that a person who was a Trump

19   supporter, as -- the evidence in the record before the jury,

20   is that Millian was a supporter of then-candidate Donald

21   Trump.

22        It doesn't make any sense at all that Mr. Millian

23   would call the defendant and provide information, such as the

24   information that's at issue here that ends up in Report

25   No. 095, that is talking about evidence to the effect of well,

─────United States v. Danchenko─────

1   there's a -- there's a well-developed conspiracy of

2   cooperation between Trump and Trump Organization and Russian

3   leadership.  That makes no sense whatsoever.

4           Nor does it make any sense that with respect to,

5   again, the evidence is before the jury in this case, that

6   Mr. Millian who had never spoken to Mr. Danchenko, there's no

7   claim that there was any prior existing relationship between

8   the two, that he would call a person he doesn't know about.

9           And, in fact, the evidence shows that on July 26th,

10  Mr. Millian is asking Mr. Zlodorev, who is this person Igor,

11  and whatnot.  If there's anything -- or the evidence in the

12  record would suggest quite the contrary, that Mr. Millian had

13  no reason to nor would he call Mr. Danchenko.

14          So, again, with respect to that particular

15  information, it would not be reasonable to conclude that

16  Mr. Danchenko actually thought that he had gotten a call from

17  Mr. Millian.

18          And then finally, with respect to the last witness

19  that we had called to the stand, not only did Special Agent

20  James' testimony establish that there were no incoming calls

21  according to the call records, the toll records or whatnot,

22  but further, there's nothing in the record that would reflect

23  that Mr. Danchenko would have or did ever share with

24  Mr. Millian anything about any apps, phone apps or internet

25  apps or the like.

─────United States v. Danchenko─────

1       Now, it is true, and the evidence -- and we'll argue

2  the other side of that point -- it is true that when

3  Mr. Danchenko was talking with the FBI, the FBI asked him to

4  produce telephone records about this call. And he said he

5  would check and he produced nothing.

6       And then he -- in that connection he was talking

7  about apps, it could have been an app call or whatnot. Well,

8  there's no evidence in this record before this jury that,

9  first of all, that Millian had any apps. There's no evidence

10  in this record that, if he did have some apps on his phone,

11  Mr. Danchenko knew what they were.

12       And, in fact, with respect to internet apps in

13  general, there's really no evidence other than Mr. Danchenko

14  making generalized remarks to the FBI concerning it could have

15  been an app, maybe Wickr, or Signal, or Viber or what have

16  you.

17       And finally, with respect to that point, the

18  evidence shows the jury could reasonably conclude that there

19  was no call made to Mr. Danchenko's phone that he describes.

20       The other side of it on the app part is, not only

21  does he not -- he, Mr. Danchenko -- not convey to Millian any

22  apps that would be applicable, but with respect to those

23  instances in which Mr. Danchenko wanted to talk to somebody

24  over an app, the evidence in the record before this jury is

25  that he would tell a person. You know, let's talk on Signal

—————United States v. Danchenko—————

1    or let's talk on some other app.  That did not happen here.

2              So respectfully, Your Honor, the government believes

3    that it has presented sufficient evidence for a reasonable

4    juror to conclude that the defendant committed the crimes of

5    which he's been charged, and accordingly, the Rule 29 Motion

6    ought to be denied and the jury ought to make the decision on

7    these matters.

8              THE COURT:  Thank you.

9              MR. DURHAM:  Thank you, Your Honor.

10             THE COURT:  Mr. Sears.

11             MR. SEARS:  Yeah.  I don't want to repeat my

12   documents, and Your Honor is well aware of the facts in the

13   case and the legal arguments in the case.

14             The testimony in this case from Agent Helson was

15   that all you need is someone's phone number to call them on an

16   app.  And just because someone doesn't say, call me on an app,

17   doesn't mean they can't call you on an app.  The person who

18   calls you gets to decide how they call you.  So I don't really

19   see how that proves anything in this case.

20             The government is the one who has the burden in this

21   case.  And they cannot prove, again, that he had Company

22   Report 105.  Whether he showed up with documents or not, he

23   was never asked at one point in all his questioning about that

24   report.

25             So there's no way of knowing where he got those

──────United States v. Danchenko──────

1063

1    reports, how many reports he had, which ones they were.  And

2    if he didn't have them and he hadn't seen them, he can't

3    knowingly have lied either -- even under their theory because

4    he would not have known that there was any miscommunications,

5    his email communications with Mr. Dolan and the report.  And

6    absent that evidence, he can't be convicted beyond a

7    reasonable doubt, and the case can't go forward.

8            With regard to, again, the term "talked," even --

9    and this is the example I used at the motion to dismiss --

10   even if he understood or had a reason to believe that Agent

11   Helson wanted to know any possible communication he had, his

12   answer is still true.

13           It's the example I gave Your Honor about, Look,

14   Mr. Sears, we want to know, were you in your office at any

15   point yesterday, okay?  Okay, I understand.  Did you go to

16   your office yesterday morning?  No, I didn't go to my office

17   yesterday morning.

18           If I didn't go to my office yesterday morning and I

19   went in the afternoon, it's true.  That's not a false

20   statement.  It's up to the agent to pin me down on that, and

21   they didn't do that.  And under those facts, it's just not

22   fair, really, for that count to go forward under those facts.

23           With regard to Mr. Millian, Your Honor, it doesn't

24   matter whether he's a Trump supporter or not, I don't know

25   what that has to do with anything related to what their burden

──────United States v. Danchenko──────

1064

1   is on that count, which is to show that he did not receive an

2   anonymous call on a messaging application.  They had not and

3   cannot prove it.

4          And if they have not and cannot prove that, then the

5   question becomes for you to determine whether any reasonable

6   juror could find that he didn't believe that that caller could

7   have been Sergei Millian.  And there's plenty of evidence that

8   would lead someone to believe that if they receive an

9   anonymous call.  Certainly enough to find that you couldn't

10  just prove that beyond a reasonable doubt.

11         And that's the question Your Honor is being asked to

12  decide at this stage, is whether any reasonable juror could

13  find him guilty of that either -- any of the five counts.

14         And for that reason, Your Honor, I think the case

15  has to end today.

16         THE COURT:  All right.  Thank you.

17         The Court is going to take a recess, and I'll get

18  back to you shortly.

19         (Recessed at 2:30 p.m. and resumed at 2:56 p.m.)

20         THE COURT:  The Court has reviewed the evidence with

21  respect to the defendant's Rule 29 motion.  The United States

22  government, through the Special Counsel's Office has brought a

23  five-count indictment against the defendant, Igor Danchenko.

24         All five counts alleged that Mr. Danchenko made

25  materially false statements to the FBI agents during a series

─────United States v. Danchenko─────

1065

1  of interviews in 2017 in violation of Title 18 of the United

2  States Code, Section 1001(a)(2).

3       Specifically, Count 1 alleges that on June 15, 2017,

4  Mr. Danchenko denied to agents of the FBI that he had spoken

5  with Charles Dolan about any material contained in the Steele

6  reports.  Despite knowing that Mr. Dolan was the source of an

7  allegation contained in a report prepared by Christopher

8  Steele dated August 22, 2016.

9       Counts 2 through 5 allege that Mr. Danchenko, on

10 March 16, May 18, October 24, and November 16, 2017, lied to

11 FBI agents when he told them that he probably spoke or was

12 under the impression or believed that he did speak with Sergei

13 Millian.

14      A Section 2001 false statement conviction requires,

15 first, the false statement in a matter involving a government

16 agency; secondly, made knowingly or willfully, that it's,

17 third, material to the matter within the agency's

18 jurisdiction.

19      The defendant has moved for a judgment of acquittal

20 under Rule 29 as to all counts.  Under Rule 29, the Court must

21 decide whether there is substantial evidence, direct or

22 circumstantial, which, taken in the light most favorable to

23 the prosecution, would warrant a jury finding that a defendant

24 was guilty beyond a reasonable doubt.

25      Therefore, the defendant's motion must be granted

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
EASTERN DISTRICT OF VIRGINIA

─────United States v. Danchenko─────

1066

1  unless sufficient evidence was adduced at trial for a

2  reasonable jury to have concluded beyond a reasonable doubt

3  that the defendant provided the false alleged statements.

4          As the Court -- Supreme Court has made clear in the

5  case *Bronston v. United States*, when it evaluated a perjury

6  conviction under Title 18, Section 1621, criminal statutes,

7  especially those involving perjury or false statements, are

8  not to be loosely construed.  Rather, as the Supreme Court

9  stated, precise questioning is imperative as a predicate for

10  the offense of perjury and is the burden on the questioner to

11  pin down the witness -- to pin the witness down to the

12  specific object of the questioner's inquiry.

13          As the Fourth Circuit has recognized, those,

14  essentially, same principles apply to a Section 2001 false

15  statement case as well; and for that reason, and as repeatedly

16  recognized by the Fourth Circuit, a prosecution for a false

17  statement under Section 1001 cannot be based on a literally

18  true statement even if that response is nonresponsive or

19  misleading.

20          Here, with respect to Count 1, the government has

21  charged Mr. Danchenko with making a false statement based on

22  the following exchange on June 15, 2017, between Special Agent

23  Helson and Mr. Danchenko:

24          "Special Agent Helson:  You had never talked to

25  Chuck Dolan about anything that showed up in the dossier,

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
EASTERN DISTRICT OF VIRGINIA

─────────United States v. Danchenko─────────

1067

1    right?

2              "MR. DANCHENKO:  No.

3              "MR. HELSON:  You don't think so?

4              "MR. DANCHENKO:  No.  We talked about, you know,

5    related issues, perhaps, but no, no, no, nothing specific."

6              The government presented two witnesses that provided

7    direct evidence concerning Count 1:  Charles Dolan and FBI

8    Special Agent Kevin Helson.  Dolan identified to one occasion

9    when he spoke on the phone with Mr. Danchenko about the

10   dossier, specifically on January 11, 2017, the day after it

11   was published by BuzzFeed.  Dolan testified, however, that

12   there was no discussion about anything in the dossier,

13   precisely what Danchenko told Helson, although the dossier was

14   mentioned.

15             The government also presented the recorded statement

16   at issue and the corresponding transcript.  The transcript of

17   June 15, 2017 interview evidences no effort on the part of

18   Agent Helson to define what he meant by "talked," either at

19   the time he asked the question or in his earlier set of

20   questions, nor do the other recorded interviews and

21   corresponding transcripts establish that Agent Helson

22   previously sought to define the word "talked."

23             Moreover, Special Agent Helson confirmed in his

24   testimony that he never explained to the defendant what he

25   meant by "talked," nor did he follow up with the defendant

United States v. Danchenko

1068

1  about what the defendant meant by his answer that he had

2  talked about related issues with Dolan.

3       The issue, then, is what the scope or meaning can be

4  attributed to the word "talk."  The leading dictionaries,

5  including those by the Fourth Circuit in *United States vs.*

6  *Sarwari* define "talk" as meaning to deliver or express in

7  speech, to express, communicate, or exchange ideas or thoughts

8  by means of spoken words, to convey or exchange ideas,

9  thoughts, information, and so on, by means of speech.  The

10  standard definition of "talk" means communication through the

11  spoken word.

12       Applying that definition, the evidence in this case

13  establishes that Mr. Danchenko's answer was literally true.

14       The government failed to introduce any evidence that

15  Mr. Danchenko verbally communicated with Dolan about the

16  Manafort allegations that ended up in the Steele dossier.

17       Moreover, Dolan, a government witness, himself,

18  clearly testified that he and Danchenko never talked about

19  anything that ended up in the dossier, including the Manafort

20  allegations.  The only communication between Dolan and

21  Danchenko involving this topic came via email.

22       Nonetheless, the government argues that Count 1

23  should be submitted to a jury because Special Agent Helson's

24  question to Danchenko about what he talked about, whether he

25  talked with Dolan, was arguably ambiguous, and it's up to the

─────United States v. Danchenko─────

1069

1  jury to decide whether Mr. Danchenko understood that the

2  question called for all communications, not just verbal

3  exchanges.

4       But given the standard definition of "talk," Agent

5  Helson's question did not fall within the category of an

6  arguably ambiguous question.  On its face, it was not

7  ambiguous at all, and the standard meaning of "talk" does not

8  readily align with the government's proffered broader meaning

9  that it includes all forms of communication, specifically

10  written communications.

11       While the literal truth defense does not apply to an

12  answer that would be true on one construction of an arguably

13  ambiguous question, but false on another, Special Agent

14  Helson's question was not arguably ambiguous.

15       To the contrary, Helson asked an unambiguous

16  question, defined otherwise would allow the government to

17  impose the serious consequences of criminal liability under

18  Section 1001 by divorcing words from the commonly understood

19  meaning.

20       For these reasons, Mr. Danchenko's answer that forms

21  the basis of Count 1 was literally true, and criminal

22  liability cannot be imposed based on the standard definition

23  of "talk."

24       The only remaining issue, then, as to Count 1 is

25  whether the government has presented sufficient evidence from

──────United States v. Danchenko──────

1    which a jury could find beyond a reasonable doubt that the

2    context of the question made it arguably ambiguous or that

3    Danchenko somehow understood the word "talked" to mean all

4    forms of communication.

5           But as the Court stated -- the Fourth Circuit stated

6    in *Sarwari*, even where a question in the midst of two

7    reasonable interpretations, some evidence must show what the

8    question meant to the defendant when he answered it.

9           In short, as other courts have recognized, the

10   government must offer some evidence, whether circumstantial or

11   direct, from which a jury could conclude beyond a reasonable

12   doubt that the defendant understood the question, as did the

13   government, and that, so understood, the defendant's answer

14   was false; and absent such proof, the government fails to

15   carry its burden.

16          Here, the government has not presented any evidence

17   that would allow the jury to find that Mr. Danchenko

18   understood the word "talk" more broadly than its standard

19   definition.

20          The government points to Government Exhibits 119 and

21   120 to argue that Mr. Danchenko attributed and understood a

22   far broader meaning to "talk" to include written

23   communications by his use of the word "conversation,"

24   "conversation on social network" and "speaking on social

25   network," but those exhibits do not mention the word "talk" or

─────────United States v. Danchenko─────────

1   any variation or associate these other words with talking.

2          Moreover, the government fails to offer any evidence

3   that Agent Helson and Mr. Danchenko previously used the word

4   "talked" in a broader meaning the government now seeks to

5   apply to the word.

6          Moreover, despite knowing that Mr. Danchenko

7   employed terms, such as "speaking on social media" and

8   "conversation on social networks" when referring to nonverbal

9   communications, such as those that occurred on or through

10  instant messages, Agent Helson did not use those terms in his

11  question.

12         Instead, Agent Helson simply used the word "talked."

13  In fact, use of the word "talk," in light of these other terms

14  that Agent Helson knew Danchenko used to include nonverbal

15  communications, would be perceived as having an important

16  objective of obtaining knowledge of communications with Dolan

17  that would not be reflected or memorialized in written form.

18         Indeed, Agent Helson testified that if what Dolan

19  said was true, Mr. Danchenko's answer was literally true; and

20  in light of that testimony, Agent Helson understood the

21  question the same way that Mr. Danchenko did, as asking for

22  verbal communications.

23         That the FBI wanted to obtain as much information as

24  possible does not change the meaning of the words used.  And

25  as the FBI observed in *United States v. Good*, that the

United States v. Danchenko

1072

1  government's question may have sought more information -- that

2  regardless of whether the government's question may have

3  sought more information, the language of the question

4  controls.

5          And Special Agent Helson's question did not ask for

6  email or written communications.

7          Likewise, Special Agent Helson did not know about

8  the email exchanges between Danchenko and Dolan and asked his

9  question in ignorance of that fact, again, does not change the

10  meaning of the words used.

11          Nor did Mr. Danchenko's immunity agreement somehow

12  transform the standard meaning of "talk."  Whatever his

13  obligations were under the immunity agreement, that agreement,

14  likewise, did not import specialized meanings into the words

15  used when asking him questions, here, specifically the word

16  "talk."

17          The Court previously denied the defendant's motion

18  to dismiss based on the premise that the government would

19  introduce at trial evidence of context that would allow a

20  reasonable juror to find beyond a reasonable doubt that

21  Mr. Danchenko understood the word "talked" to mean any form of

22  communication, including verbal and written communications.

23  The government has failed to introduce that requisite

24  evidence.

25          So for these reasons, the Court concludes that the

United States v. Danchenko

1073

1  government has failed, as matter of law, to present

2  evidence -- substantial evidence, direct or circumstantial,

3  which taken in the light most favorable to the prosecution,

4  would warrant a jury finding that Mr. Danchenko was guilty

5  beyond a reasonable doubt on Count 1, and the Court will,

6  therefore, enter a judgment of acquittal pursuant to Federal

7  Rule 29 as to Count 1.

8           With respect to Counts 2 to 5, the Court's not

9  prepared at this juncture to conclude that the evidence is

10  insufficient as a matter of law to sustain a conviction, and

11  the better course, at this point, is to reserve on this aspect

12  of the motion pending a verdict.

13           So for these reasons, Count 1 of the indictment is

14  dismissed, and Counts 2 to 5 will be submitted to the jury.

15           All right.  At this point, what I'd like to do is

16  take up the jury instructions.

17           Anything else counsel wants to raise?

18           MR. DURHAM:  Not from the government.  Thank you,

19  Your Honor.

20           MR. SEARS:  Your Honor, due to the fact the

21  government has rested and Your Honor has ruled on the Rule 29

22  motion, now would be the time for our case.

23           THE COURT:  Right.

24           MR. SEARS:  I can tell the Court we do not have a

25  case.  I'm assuming the Court would like to do a colloquy with

─────United States v. Danchenko─────

1074

1   Mr. Danchenko before --

2           THE COURT:  Right.

3           MR. SEARS:  -- before we rest.

4           THE COURT:  What I'll do is -- let me do that now.

5   Mr. Danchenko, why don't you come to the podium, please.

6           I understand from your counsel that it does not

7   intend to present a -- present a defense.  That would include

8   an opportunity for you to testify.

9           Do you understand that?

10          THE DEFENDANT:  Yes, I do, Your Honor.

11          THE COURT:  Have you spoken with your lawyer about

12  whether or not you should testify?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  And you do understand that you do have

15  the right to testify?

16          THE DEFENDANT:  I understand, yes.

17          THE COURT:  Has anyone threatened you, tried to

18  influence you in any way in making your decision not to

19  testify in this case?

20          THE DEFENDANT:  No, not in any way, Your Honor.

21          THE COURT:  All right.  Thank you.

22          And what we'll do, Mr. Sears, I'll have you announce

23  that you have no evidence before the jury before we bring them

24  in on Monday.

25          MR. SEARS:  Yes, Your Honor.

─────────────United States v. Danchenko─────────────

1075

1    THE COURT:  All right.  Why don't I take a short

2  recess, and we'll come back out and deal with the jury

3  instructions.

4    (Recessed at 3:10 p.m. and resumed at 3:29 p.m.)

5    THE COURT:  All right.  I'd like to go through the

6  contested instructions, and appreciate Counsel's working out

7  the balance of these.

8    I understand that there's really no issue as to the

9  defendant's Proposed Instruction 28, Government's Proposed

10  Exhibit Instruction A, is that right?

11    MR. SEARS:  Yes, Your Honor.  I think -- but we can

12  double-check that the language lines up between the two of

13  them, but I think the additional language in that instruction

14  is this.

15    MR. DURHAM:  In that one, Your Honor, the

16  defendant's original instruction, it included language about

17  if the evidence is capable of two instructions, one consists

18  of innocence and the other with guilt.  But that language has

19  been rejected by the Fourth Circuit, as cited in Counsel's

20  footnote and ours.  So Counsel -- the defense took that out so

21  we're in agreement as to the instruction on presumption.

22    THE COURT:  Okay.  All right.  So we'll use the --

23  either one.  Government's instruction, is that what we're --

24  either one?

25    MR. SEARS:  I think they're identical at this point.

───────United States v. Danchenko───────

1           THE COURT:  All right.  Great.

2           MR. SEARS:  Whichever one, Your Honor.

3           THE COURT:  All right.  Under false, fictitious, or

4   fraudulent statements, given the Court's ruling, do we need

5   anything other than the first two paragraphs in either -- in

6   either proposal?

7           MR. DURHAM:  The government has looked at it in the

8   recess, and I would agree.  Those -- the literal truths

9   provisions or recommendation there, if those come out, then I

10  think the instruction is the standard O'Malley instruction.

11          THE COURT:  All right.  I'm not sure we -- yeah, it

12  would just be the first two paragraphs of the Government's

13  Proposed B.

14          MR. DURHAM:  Yes, Your Honor.

15          MR. SEARS:  That is correct, Your Honor.

16          THE COURT:  All right.  And then, knew or knowing, I

17  guess the only issue is whether the -- is defendant's

18  additional sentence.  Is that right?

19          MR. SEARS:  So we submitted a supplement to our

20  Instruction 30, which was 30-1.

21          THE COURT:  I'm not sure I have that.  Do you have

22  it?

23          MR. SEARS:  I have a copy of it that I gave to the

24  Court.  Unfortunately, I only have one, but I think I may have

25  it on my computer.

─────────United States v. Danchenko─────────

1077

1           (A pause in the proceedings.)

2           THE COURT:  How does this differ from your original

3   30?

4           MR. SEARS:  Your Honor, unfortunately, I gave you my

5   only copy so I'm trying to pull it up right now.

6           THE COURT:  It looks identical to me.  It doesn't

7   have -- it doesn't have --

8           MR. SEARS:  Your Honor, we took out the "or

9   omission" language.

10          THE COURT:  Oh, right.  Right.  Right.  Okay.

11          MR. SEARS:  And that was because, you know, given

12  the nature of the charges in this case, we think it's risky to

13  put that language in there.

14          THE COURT:  Right.  Right.  All right.

15          MR. SEARS:  Yeah.  So we took it out, that language.

16          THE COURT:  What's the Government's position,

17  particularly at this point, that Count 1 is out.  Do you still

18  think "omission" should be in there?

19          MR. DURHAM:  I believe that it should remain in

20  there.  I'm not -- the Court -- there may be some additional

21  language that Your Honor would want to include or defense

22  could suggest, but the fact that Mr. Danchenko failed to, you

23  know, bring that evidence -- the -- the emails to the

24  attention of the authorities, is evidence that goes to

25  knowledge and intent.

United States v. Danchenko

1078

1      We're in agreement that his failure to produce that

2  is not what's charged in the count.  So I don't think the word

3  "omission" should actually come out, but it may be that

4  there's some other suggestion counsel has as to how that might

5  be dealt with to clarify it.

6      But the "omission of" -- "knowing omission of

7  relevant information," we believe is probative evidence and,

8  you know, striking "omission" would be a mistake.

9      THE COURT:  But this is an affirmative falsehood

10  claim in Counts 2 through 5, and the knowing requirement

11  pertains to that false statement, correct?

12      MR. DURHAM:  That is correct, Your Honor.

13      THE COURT:  So how would an omission be even

14  relevant in reference to an omission?  What would it even

15  refer to?

16      MR. DURHAM:  The failure to disclose that relevant

17  evidence or information would be evidence that would go to

18  proof of knowledge.

19      THE COURT:  With respect to Counts 2 through 5,

20  though, what was omitted?

21      MR. DURHAM:  What was omitted was his -- what was

22  omitted was providing that relevant information to the FBI in

23  response to questions that were posed, and records that were

24  requested, and the like.

25      THE COURT:  All right.  All right.  I'll consider

─────United States v. Danchenko─────

1   that.  And willfully?

2        MR. SEARS:  Your Honor, I think the -- I think the

3   primary dispute on "willfully" is we would include language

4   about an act is done willfully if it is done with the

5   intention to do something that a law forbids.

6        THE COURT:  Right.

7        MR. SEARS:  That is that the bad purpose is

8   disobeying the law.  I think that -- I think that is the law.

9        THE COURT:  Right.

10       MR. SEARS:  I think that is correct.  I -- I would

11  agree with Special Counsel's argument in their -- in their

12  objections to our instructions that they don't -- I don't

13  think they have to prove that he knew he was violating 18

14  U.S.C. 1001.

15       And I would not object to some language because I

16  have seen that in instructions from time to time that it is

17  not necessary to prove he knew what's -- what law specifically

18  he was breaking, but I do think that it's pretty black letter

19  law for willfully.  I've just got to be -- it's got to be done

20  for a bad purpose.  And we cited that in our pleading, Your

21  Honor.  Unfortunately, I think Your Honor has my copy of the

22  pleading.

23       THE COURT:  Here, let me give it back to you.

24       MR. SEARS:  I apologize.

25       THE COURT:  Let me give it back to you.

──────United States v. Danchenko──────

1080

1    I've read both sides.  I'll review this.  My

2  inclination is to give the Government's Instruction, but I'll

3  consider your position on that.

4    MR. SEARS:  Thank you, Your Honor.

5    MR. DURHAM:  Thank you, Your Honor.

6    THE COURT:  Materiality.  I think you-all were

7  fighting about is -- statement may be relevant, but not

8  material?

9    MR. SEARS:  Yes, and I think also "trivial detail"

10  is another item we're in disagreement with the Government on.

11    THE COURT:  All right.  Anything more you want to

12  say about that, Mr. Durham?  I've read your position.

13    MR. DURHAM:  I mean, I -- the difficulty, from our

14  perspective, is if the instructions that are introduced -- an

15  additional term that is relevance.

16    THE COURT:  Yeah.

17    MR. DURHAM:  And does that require an additional

18  instruction on what relevance means.  And then, an explanation

19  as to the difference between materiality and relevance.

20    And so --

21    THE COURT:  I'm not sure the case is talking about

22  relevance.  They talk about how it could be interesting or

23  wanting, and not material, but I'm not sure they use the term

24  "relevance."  It seems to me if you -- once something is

25  relevant, it gets pretty close to being material.

─────United States v. Danchenko─────

1          MR. DURHAM:  And as you're saying, it gets close to

2    the number of angels dancing in the head of a pin for most

3    people.

4          THE COURT:  Right.

5          MR. DURHAM:  So I think that that's confusion and

6    not clarity to the jury.

7          THE COURT:  All right.  I'll consider that.  What

8    I'll do is generate a proposed set of instructions and give

9    those to you Monday morning or maybe even this afternoon.  I

10   can email those out to you.

11         All right.  Good faith.  I've got an issue with both

12   of these.  On the defense, the third paragraph, "the law is

13   intended to subject criminal punishment only to those who act

14   willfully and knowingly."  I'm not sure that's appropriate.

15         On the defense side, and I've dealt with this issue

16   before.  The third paragraph, I've never quite -- I've never

17   quite known what it means that someone does not act in good

18   faith if -- even if they hold an honest -- honestly hold a

19   certain belief, but -- the defendant knowingly makes false or

20   fraudulent pretenses and so on to others.  Within what

21   context, related to what?

22         MR. SEARS:  I think that's the Government's

23   instructions.

24         THE COURT:  I know.  That's what I'm saying.  That's

25   what I'm saying.

─United States v. Danchenko─

1    MR. SEARS:  Yeah, I didn't understand that language

2  either.

3    THE COURT:  Yeah.  And on the defendant's

4  instruction, again, the third sentence is -- I'm not likely to

5  give.  "The law is intended to subject criminal punishment

6  only those who act knowingly and willfully."  I don't know

7  that --

8    MR. DURHAM:  Your Honor, with respect to the

9  proposed government's proposal, I believe that is

10  word-for-word straight from O'Malley.

11    THE COURT:  I know -- I know it is.

12    MR. DURHAM:  With respect to the third paragraph, I

13  think what the -- that particular instruction that is aimed at

14  is somebody can, you know, have an opinion that they don't

15  think they should have to, you know, whatever, be respectful

16  to the Court.

17    But whether they think it is respectful or not, if

18  they engage in contempt, if they engaged in contempt.  And I

19  think that that's what it's aimed at.  You can think a lot of

20  things or have an opinion, but simply because you have an

21  opinion, it doesn't permit good faith to save you, if you then

22  knowingly engage in what you know to be, in this instance,

23  criminal conduct.

24    MR. SEARS:  I think, Your Honor, we -- I think we

25  noted that there could be scenarios where that could be true.

United States v. Danchenko

1083

1  I just think in this case --

2          THE COURT:  Right.

3          MR. SEARS:  -- given the facts of this case and what

4  the jury is being asked to do, you couldn't do both.

5          THE COURT:  Yeah, I mean, if he -- if they thought

6  he, in good faith, believed that he had gotten a phone call.

7          MR. SEARS:  From somebody he believed was --

8          THE COURT:  This language would invite them to say,

9  Well, even though we think he, in good faith, believed he got

10  a phone call, on some other occasion with respect to some

11  other issue he was making false statements, therefore, it

12  negates the good faith of his belief on this particular

13  statement.

14          MR. SEARS:  Right.  I just think --

15          THE COURT:  It's almost a propensity kind of a

16  concern.

17          MR. SEARS:  It's very problematic, I think, for the

18  reasons the Court has just articulated.

19          MR. DURHAM:  Well, to the extent that that may be

20  the concern, that concern, I think, can be addressed, if the

21  Court were to simply add some clarifying language in that

22  provision.

23          So if -- if that paragraph or that sentence were to

24  read "the defendant does not act in good faith if -- even

25  though defendant honestly holds a certain opinion or belief,

─────United States v. Danchenko─────

1   that defendant also knowingly makes a false, fraudulent --

2   makes false, fraudulent pretenses, representations or promises

3   to others as alleged in the indictment."

4            THE COURT:  But what would -- what would -- based on

5   the evidence, what would justify the jury concluding that even

6   though the defendant honestly believed he had received an

7   anonymous phone call, that he didn't act in good faith because

8   of what?

9            MR. DURHAM:  If he honestly believed that he had

10  received a phone call.

11           THE COURT:  Yeah, if they -- if they -- if they find

12  that even though the defendant honestly holds a certain

13  opinion or belief, i.e., that he got a phone call from --

14  anonymous phone call from Millian, that he still is acting --

15  based on this instruction, he still isn't acting in good faith

16  because of what?

17           What would this instruction allow them to conclude

18  that would negate the good faith they would otherwise find?

19  If I'm making any sense.

20           MR. DURHAM:  Your Honor, I'm just trying to think

21  through why this is in here, why it's a part of the O'Malley

22  instruction, and how it applies in this case.

23           THE COURT:  Right.

24           MR. DURHAM:  If the defendant honestly believed that

25  he had gotten a phone call from Millian.

─────United States v. Danchenko─────

1      THE COURT:  Yeah.  He still wasn't acting -- he

2  didn't have a good faith belief because of what?

3      MR. DURHAM:  That would be right.  I mean, if he

4  honestly believed that he had gotten a phone call from

5  Millian, then his statement to the police, or the FBI in this

6  instance, would not be knowingly false.

7      THE COURT:  Right.  But this --

8      MR. DURHAM:  That says otherwise.

9      THE COURT:  Yeah.  This instruction tends to suggest

10  some other inquiry.

11      MR. DURHAM:  We have no objection to removing that

12  sentence --

13      THE COURT:  All right.

14      MR. DURHAM:  -- if that's --

15      THE COURT:  I mean, I'm inclined to give the

16  government's good faith instruction without that paragraph.

17      And then "nature of the offense charged," we'll take

18  out -- throughout, we're going to have to just eliminate

19  Count 1 references, but I didn't notice any other real issues

20  there.

21      MR. SEARS:  Your Honor, we had submitted a new

22  version of our 34.

23      THE COURT:  Okay.

24      MR. SEARS:  And it just -- it was more fulsome in

25  the description of how the counts were charged in the

─────United States v. Danchenko─────

1086

1  indictment, and that's the instruction that we would propose,

2  is 34.1.  I can hand it up to the Court.

3              THE COURT:  All right.

4              MR. SEARS:  This was part of our October 9th filing.

5              THE COURT:  We have a Word document on these, don't

6  we?  Do we, Bryon?

7              (A pause in the proceedings.)

8              THE COURT:  All right.  Well --

9              MR. DURHAM:  We have no objection --

10             THE COURT:  34 -- no objection to 34.1, the revised

11  one without --

12             (Simultaneously speaking.)

13             MR. DURHAM:  With respect to Count 1, that would --

14             THE COURT:  Come out?

15             MR. DURHAM:  -- come out.

16             THE COURT:  Right.  All right.  Can I hold on to

17  this?

18             MR. SEARS:  Yes.

19             THE COURT:  Did you have this in a Word document?

20             MR. SEARS:  I do.

21             THE COURT:  All right.  If you could just --

22             MR. SEARS:  Email it to the Court?

23             THE COURT:  Yes.  All right.  And I think that's it,

24  isn't it?  Those are the only --

25             MR. SEARS:  That's it.

─────United States v. Danchenko─────

1087

1        THE COURT:  And what we'll do is go through and

2   eliminate references to Count 1.

3        MR. SEARS:  And I think, Your Honor --

4        And if you don't want to do this now and you want to

5   do it when you're in the office, you could always notify the

6   Court if you have an issue with it.

7        (Counsel confers.)

8        MR. DURHAM:  We have no objection to that.  I think

9   that what we were discussing -- part of what we were

10  discussing with counsel was whether it makes more sense to

11  refer to these as the dossier reports, but I don't see that's

12  in here.  We call them the company reports.  I mean, the jury

13  knows them as --

14        (Simultaneously speaking.)

15        THE COURT:  Call them Steele reports or Steele

16  dossier?

17        MR. SEARS:  It doesn't matter to us what those

18  counts say.  I think we all know what we're talking about.  I

19  don't think it's going to be an issue, but it sounds like the

20  rest of the instruction, apart from that issue, is not

21  objectionable.

22        MR. DURHAM:  We'll read through, but if it's from

23  the indictment, no objection.

24        THE COURT:  And I'll generate a copy, full set of

25  the instructions and get those to you.

─────United States v. Danchenko─────

1088

1          MR. DURHAM:  And, Your Honor, I take it with respect

2    to those proposed instructions that the parties agreed on,

3    would it be the Court's intention to give all of those, or you

4    haven't decided?

5          THE COURT:  I'm going to go through those, but I

6    think I would unless -- I'll have to see what they are.

7          MR. SEARS:  Some aren't going to be applicable,

8    obviously.

9          THE COURT:  Right.  I'll go through those and get

10   you a proposed set.  I'll try to do that this afternoon.

11         MR. ONORATO:  Your Honor, just one other issue.  And

12   I'll propose to government counsel -- but the Court has, you

13   know, struck Count 1, and there are two witnesses who

14   testified, and I think the jury will apply common sense that

15   the, you know, testimony of the two witnesses today have no

16   bearing on the other counts.  I don't know if there's

17   something that the jury needs to be instructed about, because

18   there will be --

19         THE COURT:  I'm not sure how I will do that.  I

20   think you can do that in argument.

21         MR. ONORATO:  Okay, but the only other thing is that

22   they'll -- they were told there were five counts, and now

23   they'll only have four.

24         THE COURT:  That's the other thing I wanted to raise

25   with counsel, is your views on what I would tell the jury.  I

─────────────United States v. Danchenko─────────────

1089

1   would simply tell them that Count 1 has been -- is no longer

2   in this case, and they shouldn't let that decision affect

3   their decision as to the remaining counts.

4            Anything else?

5            MR. DURHAM:  No.  As the Court said, just something

6   neutral.  Just say no longer -- they don't need to consider

7   the count, period?

8            THE COURT:  Right.

9            MR. DURHAM:  That's fine with the government.

10           MR. SEARS:  I would, you know -- frankly, I would

11  defer to the Court, as I think I've had to on just about

12  everything.  But, you know, the concern on our end would be

13  that the jury is walking away with the impression that they --

14  you found they didn't prove that case, but you think the other

15  case is good and live, which is actually true, but, you know,

16  the message that it could send to the jury -- I trust the

17  Court to instruct --

18           THE COURT:  No, I understand.  We'll think about it,

19  and if you have some better language, I'll be happy to

20  consider it.

21           How long for closing, Mr. Durham?

22           MR. DURHAM:  We have not discussed that with

23  counsel.  Does the Court have some standard -- I mean,

24  obviously, the length of the trial --

25           THE COURT:  I would think something around an hour

─────────────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─
EASTERN DISTRICT OF VIRGINIA

─────United States v. Danchenko─────

1090

 1    for each side.

 2            MR. SEARS:  I don't see any reason why my closing

 3    wouldn't be within a hour, Your Honor.

 4            THE COURT:  Yeah.  Well, think about it.  If you

 5    want more time, let me know --

 6            MR. DURHAM:  Yes, Your Honor.

 7            THE COURT:  -- on Monday.  All right?

 8            MR. DURHAM:  Yes, sir.

 9            THE COURT:  All right.  I've read studies that say

10    juries lose all attention after 20 minutes, so...

11            MR. DURHAM:  I've noticed that over the years

12    myself, Your Honor.

13            THE COURT:  All right.  Anything else we can

14    accomplish?

15            MR. SEARS:  No, Your Honor.

16            THE COURT:  All right.  I'll see everyone Monday at

17    nine o'clock, and I'll try to get a set of instructions to you

18    this afternoon.  If not, it will be early Monday morning.

19            MR. SEARS:  And I'll email you that Word version as

20    soon as I get back to the office.

21            THE COURT:  Great.  All right.  Thank you.  Court

22    will stand in recess.

23

24            **(Proceedings adjourned at 3:50 p.m.)**

25

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

EASTERN DISTRICT OF VIRGINIA

1                    <u>CERTIFICATE OF REPORTER</u>

2

3              I, Tonia Harris, an Official Court Reporter for

4     the Eastern District of Virginia, do hereby certify that I

5     reported by machine shorthand, in my official capacity, the

6     proceedings had and testimony adduced upon the Jury Trial

7     in the case of the **UNITED STATES OF AMERICA versus IGOR Y.**

8     **DANCHENKO,** Criminal Action No.: 1:21-cr-245, in said court

9     on the 14th day of October, 2022.

10             I further certify that the foregoing 48 pages

11    constitute the official transcript of said proceedings, as

12    taken from my machine shorthand notes, my computer realtime

13    display, together with the backup tape recording of said

14    proceedings to the best of my ability.

15             In witness whereof, I have hereto subscribed my

16    name, this October 14, 2022.

17

18

19

20

21    _____
                                          Tonia M. Harris, RPR
22                                        Official Court Reporter

23

24

25

                                                          1091